WISCONSIN MOTOR CORPORATION, Appellant, vs. WISCONSIN EMPLOYMENT RELATIONS BOARD, Respondent.*

WISCONSIN EMPLOYMENT RELATIONS BOARD, Respondent, vs. INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA and another, Defendants and Respondents: WISCONSIN MOTOR CORPORATION, Appellant.*

*October 11—November 7, 1956.*

* Motion for rehearing denied, with $25 costs, on January 7, 1957.

88

90

For the appellant there were briefs by *Fairchild, Foley & Sammond, James I. Poole,* and *Herbert P. Wiedemann,* all of Milwaukee, and oral argument by *Mr. Wiedemann.*

For the respondent Wisconsin Labor Relations Board there was a brief by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

For the respondent International Union, United Automobile, Aircraft & Agricultural Implement Workers of America there was a brief by *Max Raskin,* and oral argument by *Mr. Raskin* and by *Mr. Philip L. Padden,* both of Milwaukee.

FAIRCHILD, C. J. The appellant company contends that W.E.R.B. should not have determined that the grievance over machine classifications was arbitrable. This is because in so holding W.E.R.B. decided a matter of interpretation of the collective-bargaining agreement, which the contract provided might be arbitrated in the event of a dispute over the same.

The matter of classification rates for new machines was covered by paragraph 95, section 8 of the collective-bargaining agreement, reading as follows:

"When present machines are replaced by new machines put into operation or new jobs created, the company will make a proposal to the union as to rating of the new machine or job. The rate of the new job or machine will be con-

sidered final unless the union tenders its objections to the proposal within five (5) workdays after receipt of such proposal. If the union objects the matter shall be referred to step 3 of the grievance procedure."

Paragraph 15, section 6 of the collective-bargaining agreement provided:

"Should any dispute, differences, or grievances arising because of interpretation of the contract fail to have been concluded in the above steps within ten (10) workdays after reduction to writing in the manner herein and above provided, the matter may be referred to a mutually agreed upon arbitrator, and if the parties cannot agree upon an arbitrator within five (5) workdays after written notification of intent to arbitrate is given, the appointment of an arbitrator shall be requested of the Federal Mediation and Conciliation Service, Wisconsin State Industrial Commission, or Wisconsin Employment Relations Board."

The employer maintains, under the provision contained in the above-quoted paragraph 95, section 8, that, though new-classification rates could be processed under step 3 of the grievance procedure, they could not be processed beyond that point. The union, on the other hand, contends that the provisions of paragraph 95, section 8, merely did away with processing the grievance through the first two steps of the grievance procedure; but that in the event the parties failed of agreement in step 3, those provisions did not bar the union from processing the grievance through step 4, and thence through arbitration, in the event the parties were unable to agree.

On this appeal we find it unnecessary to determine the proper interpretation of paragraph 95, section 8, quoted above, because of our conclusion below that the company, by its actions, has waived any right to question the union's processing of the grievance over the new-machine classification rates through step 4 of the grievance procedure, and thence through arbitration.

On April 27, 1955, a step-4 meeting between the representatives of the company and the representatives of the union was held to discuss grievances, and the machine rates were also talked about, the company insisting that it was discussing them as a continuation of step 3. The parties had failed to agree at step 3, and at such meeting of April 27, 1955, during the course of the meeting, the union delivered to the company a written demand that the machine rates be arbitrated. After the meeting the company sent the union a letter declining to arbitrate the machine rates and stating it as the company's position that "under paragraph 95 of the contract we are not required to process them beyond step 3, and we are prepared to arbitrate this question at any time."

Nothing further was done until the union, without consulting the company, wrote a letter to the industrial commission asking for the appointment of an arbitrator. The commission appointed Mr. Rauch as arbitrator on May 24, 1955. On May 26th, the company's attorney wrote the union, protesting its unilateral, *ex parte,* application for an arbitrator, asserting that the appointment of Mr. Rauch was void, and stating that, "We are prepared to meet with you at the earliest mutually convenient time in an attempt to agree upon an arbitrator."

The significant point to note in this letter of the company dated May 26, 1955, is the fact that the company raised no question as to the right of the union to process grievances with respect to new-machine classification rates through arbitration, but only raised the question as to the method the union had pursued to secure arbitration.

On June 3d, the company and the union held a meeting in an attempt to agree upon an arbitrator. On June 13th, the union informed the company it would stand by its original request to the industrial commission that an arbitrator be appointed.

Thereafter the company filed its complaint against the union under date of June 14, 1955, in which the union was charged with an unfair labor practice in asking the industrial commission to appoint an arbitrator without first attempting to agree with the company upon a mutually acceptable arbitrator. Such complaint contained no mention of the fact that the company contended that the new-machine classification rates were not arbitrable under the wording of paragraph 95, section 8, of the collective-bargaining agreement, or that the company desired to have such issue of interpretation arbitrated.

The company did not avail itself, as it should have done, of its claimed right under paragraph 15, section 6 of the contract, to insist on arbitration of the question whether the machine rates mentioned in paragraph 95, section 8, are subject to arbitration; but, on the contrary, it failed to take timely steps to demand and bring about such arbitration.

Two features of paragraph 15, section 6 of the contract are here pertinent. First, it does not say that disputes *shall* be arbitrated, but only that they *may* be referred to an arbitrator. Thus, arbitration is not automatic. It is a right which a party may avail himself of only by taking the necessary affirmative steps to that end. The references to ten and five workdays show that time is of the essence, and that the contract contemplates prompt action to bring about an arbitration.

In the light of these provisions and its own conduct, the company was in no position before the W.E.R.B. to insist that the arbitrability of machine-classification rates must be arbitrated instead of the machine rates themselves.

We, therefore, are of the opinion that, in the circumstances here present, the company had, by its failure to take any affirmative steps to bring about timely arbitration of the question of contract interpretation, and by its letter of May 26, 1955, and its complaint of an unfair labor practice, dated

June 14, 1955, foreclosed itself from insisting that the W.E.R.B. should order arbitration of the dispute as to the interpretation of the contract relative to the arbitrability of machine rates. The company cannot now be heard to object to the board's determination that it must arbitrate the machine rates rather than the arbitrability of the machine rates.

The company seeks to escape the result of its want of diligence in asserting its claimed right to arbitrate the question of contract interpretation, by arguing that only the union can take the initiative in processing grievances. While that may be true with respect to the usual type of employee grievance, there is nothing in paragraph 15, section 6 of the contract which adopts any such rule with respect to arbitration of other disputes. That section specifically authorizes arbitration with respect to "any dispute, differences, or grievances arising because of interpretation of the contract," and it is a fair implication that the party desiring to arbitrate such a dispute must take reasonable and timely steps to bring about arbitration.

With this removal from the case of the question of the arbitrability of the interpretation of paragraph 95, section 8, the only remaining issue is whether W.E.R.B. properly held the company guilty of an unfair labor practice in refusing to arbitrate the grievance under step 4 of the grievance procedure. It is our conclusion, based upon our decision in *Dunphy Boat Corp. v. Wisconsin E. R. Board* (1954), 267 Wis. 316, 64 N. W. (2d) 866, that the board did properly find the company guilty of an unfair labor practice, and that the order directing arbitration of the machine rates must be upheld.

If the instant collective-bargaining agreement had made it mandatory that all issues over its interpretation must be arbitrated, W.E.R.B. would have committed an "error of law" within the provisions of sec. 227.20(1) (b), Stats., to have done otherwise than order the interpretation of para-

graph 95, section 8, be arbitrated. However, as previously pointed out herein, the wording of paragraph 15, section 6, made such arbitrability of a question of contract interpretation optional with the parties, and the company, by its conduct, waived its right to have W.E.R.B. order arbitration of such issue. Therefore, it was proper for W.E.R.B. to interpret paragraph 95, section 8, as well as other portions of the contract, to determine whether the company had committed an unfair labor practice.

Other issues were raised in the briefs which we find it unnecessary to determine in view of our decision holding that there was a waiver by the company of its right to request arbitration of the contract-interpretation question.

*By the Court.*—Judgments affirmed.