EMPLOYEES LABOR ASSOCIATION OF THE PROCTER & GAMBLE MANU-FACTURING COMPANY, Plaintiff,

v.

PROCTER & GAMBLE MANUFACTUR-ING COMPANY, Defendant.

No. KC-940.

United States District Court
D. Kansas.
April 22, 1959.

Robert S. Fousek and John J. Manning, Kansas City, Mo., and James H. Barnes, Kansas City, Kan., for plaintiff.

Harry L. Browne and Joseph J. Kelly, Jr. (of Spencer, Fane, Britt & Browne), Kansas City, Mo., James O. Coates and Jack G. Evans (of Dinsmore, Shohl, Dinsmore & Tod), Cincinnati, Ohio; and Robert F. Bennett, Prairie Village. Kan., for defendant.

STANLEY, District Judge.

This action was instituted by the plaintiff, The Employees Labor Association of The Procter & Gamble Manufacturing Company (now known as The Independent Soap and Chemical Workers of Kansas City, Kansas), and seeks to compel the defendant, The Procter & Gamble Manufacturing Company, to specifically perform a provision in the collective bargaining agreement entered into between the plaintiff and the defendant on or about March 12, 1956, which provides for arbitration of grievances.

The plaintiff is a local labor organization which represents the employees of the defendant. For some years this unincorporated association has represented the employees and had entered into several earlier contracts with the defendant.

At some date subsequent to the execution of the collective bargaining agreement of March 12, 1956, the defendant purchased a fork-lift tractor known as a "Buda" machine and placed it into operation at its plant located in Kansas City, Kansas. At the time of its purchase, the defendant instructed several employees as to its operation and did not assign any certain employee exclusively to the task of operating it. It was made available for use by any department of the plant.

It is the contention of the plaintiff that the purchase and operation of the Buda machine created a "new job" which, by the terms of the collective bargaining agreement, should have been posted so that employees might bid for the job. The steps provided in the agreement for the handling of a grievance were followed, but settlement of the dispute was not achieved. A request for arbitration, made by the plaintiff, was refused by the defendant. It is the plaintiff's contention that such conduct by the defendant amounted to a refusal to perform the agreement. The defendant has taken the position that there is nothing to be presented to an arbitration board and that the parties did not agree to submit to arbitration the question here involved.

The action is brought in this court under the provisions of § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185. Since the decision of the Supreme Court in Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, there can be no question

concerning the jurisdiction of this court to entertain an action for specific performance of a collective bargaining agreement. Engineers Ass'n v. Sperry Gyroscope Co., 2 Cir., 251 F.2d 133, certiorari denied, 1957, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762.

■ This court in the first instance must determine whether or not the question of arbitrability has been left to the arbitrator or to the court, a question of contract interpretation. The next question, dependent upon the answer to the first, is whether the dispute or grievance is one which is arbitrable. Local 205, United Elec. Radio and Mach. Workers of America (U E) v. General Electric Company, 1 Cir., 1956, 233 F.2d 85, affirmed 1957, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028; International Union United Auto Aircraft v. Benton Harbor Malleable, Ind., 6 Cir., 242 F.2d 536, certiorari denied 1957, 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31.

The agreement between the plaintiff and the defendant contains provisions concerning grievances. Article VI of the agreement provides in part:

"1. *Definition* A grievance is defined to be any difference between the Employer and the Union * * as to any matter involving the interpretation or application of any provision of this agreement, or any matter directly affecting the employee in respect to hours of work, wages, working conditions or any rights under this agreement."

*       *       *       *       *       *

"3. *Arbitration* In the event that this procedure does not accomplish speedy and satisfactory adjustment, any grievance having to do with the interpretation or application of any provision of this Agreement *may* be submitted to a Board of Arbitration. *The Board of Arbitration shall confine its consideration to any issue or issues stipulated* by the Employer and the Union, and shall neither add to nor subtract from the written provisions of this Agreement in

reaching their decision. The Union and the Employer will make a sincere, good-faith effort to arrive at the issue. In the event that arbitration is called for by either party hereto, the Employer and the Union shall each appoint one arbitrator within fifteen (15) days after such request. * * *" (Emphasis supplied).

■ It is apparent that the parties by the terms of their agreement did not leave the question of arbitrability to the arbitrators. They are empowered to consider only issues submitted by stipulation. The decision as to whether a matter is in fact arbitrable rests with others than the arbitrators, namely the parties or the courts. The arbitrators are given authority to determine *only* such disputes over the interpretation or application of the provisions of the agreement as may be submitted, and then are limited to consideration of issues stipulated by the parties.

■ In the present case, there is a dispute over whether or not a "new job" was created by management when it purchased the Buda machine and placed it into operation. The agreement provides that when a new job is created notice thereof shall be posted and employees permitted to bid for it. There is nothing in the agreement with respect to determining when a new job has been created —the only provision is that when one is created it shall be posted. It is conceded that a job was not posted when the Buda machine was brought into the plant.

The actual controversy in this case is whether the conduct of the management in purchasing the Buda machine and placing it into operation in the plant created, first, a "job"; and second, whether the job, if created, was a "new job."

The plaintiff relies principally upon Engineers Ass'n v. Sperry Gyroscope Co., supra [251 F.2d 136] which concerned wage increases given to several employees upon their transfer to a different plant. By the terms of the agreement wage increases were to be given on a

merit basis only. The union contended that the increases given were not for merit but as an inducement to transfer and desired arbitration upon the matter. The arbitration clause was similar to the one in the case at bar in requiring that the grievance to be arbitrated arise out of the "interpretation or application of the provisions" of the agreement. The arbitration clause of the Sperry contract provided that such grievances "*shall*" be arbitrated at the request of either party. Although the determination of *when* merit increases were to be made was within the sole discretion of management, the court found the question to be *whether* such increases *as had in fact been made* were based on merit and: "A determination of their true nature is properly arbitrable under the contract." Note, however, that in the Sperry case it was not disputed that there had been increases in wages; in the case at bar it is not admitted that a "job" had been created by the introduction of the Buda machine.

Local No. 149 of Am. Federation of Technical Engineers (A.F.L.) v. General Electric Company, 1 Cir., 1957, 250 F.2d 922, certiorari denied 1958, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813, was a case brought by the union seeking to arbitrate the classification of jobs. The agreement provided that jobs were to be classified and graded with corresponding wages fixed for each classification. There was nothing in the contract that permitted the union to have any say concerning what wage classification a particular job should carry or be limited to, management having sole discretion in this regard. The court refused to order arbitration finding that there was no language in the contract to be interpreted or applied for the purpose of determining whether a job should be given any certain wage classification. In the case at bar, there is no language in the agreement to be interpreted or applied to determine whether a job had been created by management's conduct.

If, from the evidence introduced, the court should find that a job was created in the defendant's plant when it brought the Buda machine in, the determination of whether the job so created was a "new" job would appear to be an arbitrable issue, provided all other requirements in the agreement had been met. The evidence introduced on behalf of the plaintiff consisted solely of the testimony of a Mr. Roos, who was chairman of the plaintiff's grievance committee. Further evidence on the use or application of the Buda machine came from witnesses for the defendant. The testimony was to the effect that the machine was used by a considerable number of different employees; that the machine was not used for one certain task, but was employed generally in moving and lifting heavy objects; and that no one department used the machine exclusively, but that it was used by any department having need for it.

In the Sperry case, supra, it is stated (as to the quantum of proof necessary to show an issue to be arbitrable) that: "Determination of arbitrability only requires that the moving party produce evidence which tends to establish his claim. Once the tendency of the evidence to support the claim has been established, it is then the function of the arbitrator to weigh all the evidence and to then determine whether the contract was broken." Has the plaintiff produced evidence which tends to establish its claim that a "new job" was created by the purchase of the Buda machine? In arriving at an answer to this question, it is necessary that all of the evidence introduced on this matter be considered, and such a consideration leads to the conclusion that there is no "tendency of the evidence to support the claim." The evidence tends to show rather that the Buda machine was used as a tool, as an aid in performing a task or job which already existed.

The plaintiff's brief, on page 5, concedes that the machines pictured in the exhibits introduced by the defendant "all might well be called 'tools' except for the frame tractor." These other machines were used for the purpose of lifting or hauling heavy objects in the plant. In

fact the Buda machine apears quite similar to the "fork-lift" shown in defendant's Exhibit R, except for the fact that the Buda is capable of handling larger loads and can lift them, apparently, to a greater height. The testimony of Mr. Roos that the Buda was in use about 90% of the day would not tend to show the creation of a "new job" or even of a "job," it would show instead the value of the machine to those performing jobs or tasks which would have had to be done whether the Buda existed or not.

A further reason appears for not requiring the defendant to specifically perform the arbitration clause. It is to be noted that the arbitration clause of the agreement does not make mandatory the arbitration of any dispute concerning interpretation or application of the provisions. The clause says that any such grievance *"may"* be submitted to arbitration. It further requires the arbitrators to confine their consideration to the issue or issues stipulated by the parties and there is nothing in the agreement requiring a stipulation of issues.

Plaintiff cites Local 19, Warehouse, Processing and Distributive Workers Union, Retail, Wholesale and Department Store Union v. Buckeye Cotton Oil Co., 6 Cir., 1956, 236 F.2d 776, 777, certiorari denied 1957, 354 U.S. 910, 77 S.Ct. 1293, 1 L.Ed.2d 1428, as being in point on the question of enforceability of the arbitration clause. However, it is to be noted that the clause in that agreement was mandatory: " * * * the matter shall * * * " be arbitrated.

■ Textile Workers Union of America v. Lincoln Mills, supra, established the rule that arbitration clauses in collective bargaining agreements were enforceable under the Labor Management Relations Act of 1947. The rule does not, however, require that every arbitration clause be considered enforceable.

■■ It is not for the court to fashion a contract for the parties nor to require that to be done which the contract makes discretionary. Refinery Employees' Union of Lake Charles Area v.

Continental Oil Company, D.C.W.D.La., 1958, 160 F.Supp. 723.

Judgment will be entered for the defendant.

Counsel for the defendant will prepare and submit an appropriate journal entry.