BUILDERS ASSOCIATION OF KANSAS CITY, Appellant,

v.

GREATER KANSAS CITY LABORERS DISTRICT COUNCIL OF the INTERNATIONAL HOD CARRIERS BUILDING AND COMMON LABORERS UNION OF AMERICA OF GREATER KANSAS CITY AND VICINITY, Appellee.

No. 17403.

United States Court of Appeals
Eighth Circuit.

Jan. 23, 1964.

Rehearing Denied Feb. 28, 1964.

Harry L. Browne, Kansas City, Mo., made argument for appellant and filed brief with Howard F. Sachs, Stanford C. Madden, Kansas City, Mo., and counsel Spencer, Fane, Britt & Browne, Kansas City, Mo.

John Manning, Kansas City, Mo., made argument for appellee and filed brief with Robert S. Fousek, Kansas City, Mo.

Before SANBORN, VOGEL and BLACKMUN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal by the defendant, Builders Association of Kansas City,[1] from a summary judgment for the plaintiff (appellee) [2] in an action brought by it under § 301(a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. § 185(a), to enforce arbitration

1. The Builders Association of Kansas City is an association composed of commercial and industrial contractors, subcontractors, residential builders, and suppliers of various kinds in the building business, largely in the metropolitan area of Kansas City. Its membership is approximately 600 firms.

2. Plaintiff, Greater Kansas City Laborers District Council, is a labor organization

of a dispute arising out of a collective bargaining agreement.

The agreement contains the following provisions:

"ARTICLE IX—ARBITRATION.

"There shall be no stoppage of work on account of any differences which may occur between a member or members of the Association and the Union. If the matter cannot be adjusted between the parties involved, it shall be taken up between a representative of the Union, and a representative of the Association. If then the matter cannot be settled satisfactorily, it shall be immediately referred to an Arbitration Board consisting of three members appointed by the Association and three members appointed by the Union. These six men shall have authority to choose a neutral third party who shall act as arbiter and the decision of the arbiter shall be final and binding upon both parties and must be in writing."

"ARTICLE VI—HEALTH AND WELFARE.

"Effective April 1, 1962, ten cents (10¢) per hour for all classifications shall be paid by employers into a health and welfare insurance program in accordance with a Trust Agreement to be agreed upon between the parties.

"At the time of the establishment of such Health & Welfare Plan, provisions may be inserted in this Agreement to authorize suit for the collection of any delinquent accounts owing to such Health & Welfare Fund."

as defined in Section 2(5) of the Labor Management Relations Act, 1947, 29 U.S.C. § 152(5), composed of delegates from affiliated locals and organized July 21, 1947, under the Constitution of the International Hod Carriers, Building and Common Laborers Union of America, as adopted by its Fourteenth Convention, October 16–20, 1961.

The claim stated in the complaint was, in substance, that the parties, who are subject to the Act, had been unable to agree upon a trust agreement as provided by Article VI of the collective bargaining agreement, and that the defendant had declined the plaintiff's requests to arbitrate the dispute.

The factual and legal basis for the conclusion that the plaintiff was entitled to summary judgment to compel the defendant to arbitrate the dispute has been thoroughly and exhaustively covered by Judge Oliver in his two opinions reported in D.C.Mo., 213 F.Supp. 429 and D.C. Mo., 217 F.Supp. 1. We shall avoid useless repetition.

The defendant asserts that the District Court erred: (1) in ordering arbitration of a nonarbitrable dispute having to do with the creation of a new agreement; (2) in ruling that the parties had agreed to arbitrate such a dispute, (a) because the record shows that they did not so agree, and (b) because there were material issues of fact relating to the intent of the parties which precluded the entry of summary judgment; (3) in ruling that the plaintiff had standing to bring the action; and (4) in failing to apply the equitable "unclean hands" doctrine to the plaintiff's claim.

It seems to us, as it did to Judge Oliver, that implications to be drawn from the decisions of the Supreme Court in United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; Drake Bakeries, Inc., v. Local 50, American Bakery & Confectionery Workers International, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474; and Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462, not only justified but required the entry of the judgment under review. Undoubtedly the parties to the collective bargaining agreement could have excluded from the arbitration clause any and all disputes arising under Article VI, but they did not do so. The Supreme Court in United Steelworkers of American v. Warrior & Gulf Navigation Co., supra, pages 581, 584, 585 of 363 U.S., pages 1352, 1353, 1354 of 80 S.Ct., 4 L.Ed.2d 1409, made the following statements:

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must * * * come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement.

\* \* \* \* \* \*

" * * * In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. * * *

\* \* \* \* \* \*

"The judiciary sits in these cases to bring into operation an arbitral process which substitutes a regime of peaceful settlement for the older regime of industrial conflict. * * "

It is our conclusion that the dispute arising under Article VI was arbitrable, as the trial court ruled. That the dispute arose out of the failure of the parties to conform to their undertaking to agree upon a trust agreement in accordance with which contributions by employers to the health and welfare insurance program were to be paid, we think did not remove the dispute from the coverage of Article IX, the arbitration provisions.

The defendant, to support its contention that the dispute in suit is not arbitrable because it concerns the creation of a new agreement, relies upon the de-

**870**

cision of Judge Wyzanski in Boston Printing Pressmen's Union v. Potter Press, D.C.D.Mass, 141 F.Supp. 553 (1956), affirmed 1 Cir., 241 F.2d 787 (1957), cert. denied, 355 U.S. 817, 78 S.Ct. 21, 2 L.Ed.2d 34. The case arose several years before the Steelworkers cases were decided by the Supreme Court. Th question was whether a federal court could, by virtue of § 301 of the Labor Management Relations Act, compel an employer, under a collective bargaining agreement, to submit to arbitration the terms of a new agreement to replace the old, where the old agreement provided that all unreconcilable questions regarding the making of a new agreement should be decided by arbitration. The District Court said (page 554 of 141 F.Supp.):

> "Stated summarily, plaintiff's complaint seeks a mandatory injunction enforcing the parties' written agreement to submit to arbitration a new contract to govern employment conditions at defendant's plant following the expiration on September 1, 1954, of their collective bargain. In short, the Court is asked to direct what may conveniently be described as a *prospective* or *quasi-legislative* arbitration establishing future labor conditions not *specifically* envisaged in their earlier contract. This is, at least with respect to industrial labor problems, a novel problem not hitherto adjudicated by a federal court acting under the asserted authority of § 301 of the Taft-Hartley Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185."

It was held that the federal court was without authority to compel arbitration of the dispute. In the light of what we conceive to be the teachings of the Supreme Court in the cases to which we have referred, we are convinced that the decision in Boston Printing Pressmen's Union v. Potter Press is far too weak a peg upon which to hang a reversal of the judgment in the instant case.

To avoid any misconception of our rulings in the instant controversy, we hold (1) that the dispute arising under Article VI of the collective bargaining agreement was, by the terms of Article IX, an arbitrable dispute; (2) that neither by express agreement of the parties nor by necessary implication was the dispute one excluded from arbitration; (3) that the collective bargaining agreement expressed in unambiguous language the intention of the parties that arbitration should be resorted to for settlement of disputes; and (4) that there were no factual issues precluding the District Court from entering summary judgment.

Judgment affirmed.