J. C. BONNOT, d/b/a Bonnot Construction Company, Appellant,

v.

CONGRESS OF INDEPENDENT UNIONS LOCAL #14, Appellee.

No. 17459.

United States Court of Appeals Eighth Circuit.

May 4, 1964.

Paul S. Kuelthau, of Moller, Talent & Kuelthau, St. Louis, Mo., argued for appellant and filed brief with Harry H. Kay, and Robert J. Quigley, Eldon, Mo.

James K. Almeter, Alton, Ill., argued for appellee and filed brief with Joseph R. Nacy, Jefferson City, Mo.

Before VOGEL, MATTHES and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

This is another case which raises the issue of contractual arbitrability.

The Congress of Independent Unions, Local #14 (the union) brings the action under § 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185, against J. C. Bonnot, d/b/a Bonnot Construction Company (the contractor).

The union's complaint alleges that the contractor, continuously since 1960 and contrary to the terms of their collective bargaining agreement, has failed and refused to recognize the union as the exclusive bargaining agent for the contractor's employees and has failed and refused to require membership in the union as a condition of employment. Damages consisting of the union's loss of initiation and regular dues are claimed. Relief by way of injunction from further violation is also requested. The complaint does not allege that the asserted violations were processed through the contract's grievance procedure.

The parties' agreement is an exhibit attached to the complaint. It provides that "The Contractor agrees to recognize the Union as the sole and exclusive collective bargaining agency for all his employees" and that his employees "shall maintain their membership in the Union as a condition of employment". Article 5, entitled "Grievances", reads:

"Section 1. The Union and Contractor agree that there shall be no strikes, lock-outs, tie-ups or legal proceedings without first using all possible means of settlement, as provided in this Agreement, of any controversy which might arise.

"Section 2. A grievance shall include any difference of opinion between the Contractor and any union member over the interpretation of this Agreement. * * *"

Then follow conventional provisions as to the time within which a grievance is to be brought to the contractor's attention, as to consideration of the matter by the contractor and union representatives and

"In the event the two parties do not agree after the steps outlined in paragraph 3 above, then either party may request arbitration and follow the following procedure: " * * *."

The procedure specified is a common one providing for the appointment of arbitrators and for the finality of the arbitration; its details are not pertinent here.

The contractor, before filing his answer, promptly moved to dismiss the complaint on the ground that it stated no "claim upon which relief can be granted". This motion was denied. In an unreported memorandum in support of that ruling, the district court made the assumption that the motion was based upon the union's failure to exhaust the contract's arbitration procedure but went on to hold that the import of the agreement's language

" * * * is to include within the arbitration procedure only those disagreements involving the operation of the contract, and it cannot be said to include the requirement that civil actions between employer and the union for damages for breach of the essence of the agreement be arbitrated."

After the denial of the motion to dismiss, the contractor filed his answer. Later he moved for reconsideration of the denial of the dismissal motion. This was upon the authority of Drake Bakeries Inc. v. Local 50, American Bakery etc., Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), not theretofore cited to the court. In a supplemental mem-

orandum, also unreported, the district court noted that the contractor and an intervening union by their answers had asserted that the bargaining agreement was wholly invalid. It observed that in Drake there was no allegation that the contract itself was illegal and invalid. From this it reasoned that "If the contract is invalid, the arbitration clause is invalid"; that arbitration is dependent upon the consent of the parties; and that basic questions, such as the existence of the contract or its breach, "which would amount to a denial of its existence are not susceptible to arbitration under the provisions of this alleged agreement." The motion to reconsider was therefore denied. The court, however, granted the contractor's motion for certification under 28 U.S.C. § 1292(b) for an interlocutory appeal. This court permitted the appeal.

■ There may well be, of course, a logical inconsistency between the contractor's reliance, in his motions to dismiss and for reconsideration, upon the efficacy of the bargaining agreement and its prescribed arbitration procedure, on the one hand, and, on the other, his assertion in his answer, of the contract's illegality and ineffectiveness. For purposes of the contractor's motion to dismiss, however, the trial court and this court are to accept as true the well pleaded allegations of fact contained in the complaint. Polk Co. v. Glover, 305 U.S. 5, 9, 59 S.Ct. 15, 83 L.Ed. 6 (1938); Creswell-Keith, Inc. v. Willingham, 264 F.2d 76, 81 (8 Cir. 1959); McCleneghan v. Union Stock Yards Co., 298 F.2d 659, 662 (8 Cir. 1962). This is to be done without reference or concern as to a subsequent responsive pleading chronologically compelled by the denial of the motion to dismiss. See Polk Co. v. Glover, supra, p. 9 of 305 U.S., 59 S.Ct. 15, 83 L.Ed. 6; Department and Specialty Store Employees' Union, Local 1265 v. Brown, 284 F.2d 619, 623 (9 Cir. 1961).

With our view so confined, the case at once falls into that developing area of labor law governed by Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) and its two companion cases, General Electric Co. v. Local 205, United Electrical etc., Workers, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957) and Goodall-Sanford, Inc. v. United Textile Workers, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957); by the trilogy of United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), United Steelworkers of America, A.F.L.-C.I.O. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); by the later trilogy of Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), and Drake Bakeries, Inc. v. Local 50, American Bakery etc. Workers, supra, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); and by John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Our analysis of these opinions convinces us that the contractor's motion to dismiss here should have been granted.

Lincoln Mills and its companions clearly establish the principles, pp. 451 and 455–456 of 353 U.S., pp. 915, 917 of 77 S.Ct., 1 L.Ed.2d 972, that § 301 "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements"; that the statute "expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way"; and that "the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws".

In the Steelworkers trilogy we find renewed emphasis on arbitration as a stabilizing factor in effectuating national la-

bor policy. It was there said, p. 578 of 363 U.S., p. 1351 of 80 S.Ct., 4 L.Ed.2d 1409, that "arbitration is the substitute for industrial strife"; that under collective bargaining agreements it "is part and parcel of the collective bargaining process itself"; that "the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government"; that "Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore, come within the scope of the grievance and arbitration provisions of the collective agreement", p. 581 of 363 U.S., p. 1352 of 80 S.Ct., 4 L.Ed.2d 1409; that, although the courts have "the duty of determining whether the reluctant party has breached his promise to arbitrate" and, thus, "arbitration is a matter of contract", nevertheless, "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"; that "Doubts should be resolved in favor of coverage", pp. 582–583 of 363 U.S., pp. 1352, 1353, of 80 S.Ct., 4 L.Ed.2d 1409; and that this is particularly so where "the exclusion clause is vague and the arbitration clause quite broad", p. 585, of 363 U.S., p. 1354 of 80 S.Ct., 4 L.Ed.2d 1409.

The second Atkinson and Drake lend even further emphasis to all this and, at the same time, clearly illustrate significant differences which may exist between collective bargaining agreements. Each case was an action under § 301 for damages for violation of a no strike clause. The question was whether the company was bound to arbitrate its claim. In Atkinson the court held that it was not. It reached this conclusion by an analysis of the agreement itself and by a conviction that the arbitration provisions were limited to employee grievances and could be invoked at the option of only the union. In Drake, on the other hand, the court reached the opposite conclusion and held that the employer there must arbitrate its damages claim, al-though in a forum "very different from a courtroom", p. 266 of 370 U.S., 82 S.Ct. 1346, 8 L.Ed.2d 474, and that the arbitration clause was of such breadth as to compel a conclusion that the parties had agreed to arbitrate.

In Wiley the Supreme Court, in considering the effect of a corporate merger upon a bargaining agreement's arbitration clause, once again recognized and enunciated the same principles. There a unanimous court (other than one justice not participating) referred to "the central role of arbitration in effectuating national labor policy" and stated that "The preference of national labor policy for arbitration as a substitute for tests of strength between contending forces could be overcome only if other considerations compellingly so demanded". The policy favoring arbitration was held in that case to be "not wholly overborne by the fact that [the emerging employer-corporation] did not sign the contract being construed". See also Local No. 721, United Packinghouse, Food and Allied Workers, A.F.L.-C.I.O. v. Needham Packing Co., 84 S.Ct. 773 (1964).

■ This court has necessarily followed this lead and has been obliged to give broad and liberal interpretation to arbitration clauses in collective bargaining agreements. See Selb Mfg. Co. v. International Ass'n of Machinists, 305 F.2d 177 (8 Cir.1962); Builders Ass'n of Kansas City v. Greater Kansas City Laborers District Council, 326 F.2d 867 (8 Cir.1964), petition for certiorari filed March 30, 1964; Bevington & Basile Wholesalers, Inc. v. Local No. 46, International Union of United Brewery Workers, 330 F.2d 202 (8 Cir.1964). The same approach is evident in two other recent cases of this court where the issue was the proper extent of an arbitrator's authority under the bargaining agreement. Kansas City Luggage & Novelty Workers Union Local No. 66, A.F.L.-C.I.O. v. Neevel Luggage Mfg. Co., 325 F.2d 992 (8 Cir.1964); Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co., 330 F.2d 562 (8 Cir.1964).

With these principles in mind, the question or arbitrability of the issues raised by the complaint with respect to the recognition clause and the maintenance of membership clause in the agreement before us is easily resolved. We read Article 5 as a unit and we are not persuaded by the Union's argument that its first section concerns one class of disputes which are not arbitrable and that its subsequent sections concern another class which are optionally arbitrable. Article 5, although entitled "Grievances", by no means confines itself to individual employee grievances of the kind to which the agreement in the second Atkinson, supra, was limited. Instead, it broadly provides that there "shall be no strikes, lock-outs, tie-ups", or, indeed, even "legal proceedings" without first using the means of settlement "as provided in this Agreement, of any controversy which might arise"; that a grievance "shall include any difference of opinion between the Contractor and any union member over the interpretation of this Agreement"; and that upon failure to agree "either party may request arbitration". There may be, arguably some lack of spotless consistency in this language. We feel, however, that it convincingly reveals the intent and the agreement of the parties to provide a very broad base for arbitration. The contract appears to us just as forcefully, if not more forcefully, to require arbitration than did the contracts in American Mfg. Co., pp. 565 and 569 of 363 U.S., pp. 1345 of 80 S.Ct., 4 L.Ed.2d 1403, (disputes and differences "as to the meaning, interpretation and application of the provisions of this agreement"), in Warrior & Gulf, p. 576 of 363 U.S., p. 1349 of 80 S.Ct., 4 L.Ed. 2d 1409, (differences "as to the meaning and application of the provisions of this Agreement"), and in Drake, p. 257 of 370 U.S., p. 1348 of 82 S.Ct., 8 L.Ed.2d 474, ("all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties hereto, directly or indirectly"). There is, of course, no significance in the fact that in Drake it was the employer which instituted the damage suit whereas in this case it is the union.

We therefore hold that the contract unambiguously expresses the agreement of the parties that arbitration was to be resorted to for this dispute's settlement, that the dispute was arbitrable, and that the contractor's motion to dismiss the complaint should have been sustained. The trial court's error lay in its failure to confine its consideration of the motion to the complaint as the only pleading pertinent for that purpose.

We should mention, perhaps, the union's suggestion that the bargaining agreement does not compel arbitration but only provides that either party "may" request it; that it is thus permissive and optional; and that neither it nor the contractor elected to arbitrate. The result claimed to follow is that the arbitration here is not mandatory. We think the result is necessarily the other way. The obvious purpose of the "may" language is to give an aggrieved party the choice between arbitration or the abandonment of its claim. The presence of this or similar language has not prevented the conclusion that a claim, if pressed, is compulsorily subject to arbitration. See American Mfg. Co., supra, p. 565 of 363 U.S., 80 S.Ct. 1343, 4 L.Ed.2d 1403, where the contract provided that differences "may be submitted", and Drake, supra, p. 257 of 370 U.S., p. 1349 of 82 S.Ct., 8 L.Ed.2d 474, footnote 2, where the contract read, "either party shall have the right to refer the matter to arbitration". The Fifth Circuit has flatly rejected the union's argument. Deaton Truck Line, Inc. v. Local 612 etc., International Bhd. of Teamsters, 314 F.2d 418, 422 (5 Cir.1962). We agree. If either Employees Labor Ass'n v. Proctor & Gamble Mfg. Co., 172 F.Supp. 210, 214 (D.Kans.1959), or Wisconsin Motor Corp. v. Wisconsin Employment Relations Bd., 274 Wis. 85, 79 N.W.2d 119, 124 (1956), contains any implication to the contrary,

we only note that both were decided before American Mfg. Co. and Drake. We follow the later federal precedents we have cited.

Reversed.