**RESILIENT FLOOR AND DECORATIVE COVERING WORKERS, LOCAL UNION 1179, affiliated with the Brotherhood of Painters and Allied Trades, AFL–CIO, Appellee,**

v.

**WELCO MANUFACTURING COMPANY, INC., Appellant.**

No. 76–1100.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1976.

Decided Oct. 21, 1976.

**1030**

James R. Willard, Kansas City, Mo., for appellant.

Steve A. J. Bukaty, Kansas City, Kan., for appellee; Blake, Uhlig & Funk, Kansas City, Kan., on brief.

Before STEPHENSON, Circuit Judge, MARKEY, Chief Judge,* and HENLEY, Circuit Judge.

HENLEY, Circuit Judge.

This is an appeal from an order entered by the district court [1] enforcing the award made by an arbitrator [2] to whom a labor dispute had been referred pursuant to a collective bargaining agreement between the appellant company, defendant below, and the appellee union, plaintiff below. The arbitration award directed the company to reinstate three discharged employees with all seniority rights and back pay less sixty days and interim earnings. The company reinstated the three men, but refused to pay the back wages as prescribed, contending that the award of partial back pay was made in excess of the arbitrator's au-

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The Honorable William R. Collinson, United States District Judge for the Western District of Missouri.

2. Stanford C. Madden, Esq.

thority. The district court determined that the award of back pay was within the authority of the arbitrator, and that failure of the company to comply with it constituted a breach of the collective bargaining agreement. The company was ordered to abide by the award and pay the reinstated grievants back wages less those due for sixty days. We affirm that order.

The facts were undisputed. The appellant, Welco Manufacturing Company, Inc., a Missouri corporation with its principal place of business in North Kansas City, Missouri, was engaged in the business of furnishing labor and materials for the interior finishing of buildings. At all times here pertinent it was an employer with activities that affected interstate commerce, and was subject to the provisions of the National Labor Relations Act and the Labor-Management Relations Act, 29 U.S.C. § 151 *et seq.*

In 1974 and 1975 appellee Carpet Layers Union was the collective bargaining representative of the employees of the company, and the parties were operating under a duly negotiated and executed collective bargaining agreement. That agreement provided among other things that employees would not be discharged without just cause.

The agreement also contained a provision to the effect that employee grievances would finally be resolved by binding arbitration. The authority of the arbitrator was expressly limited by Article XXIII, § 2 of the contract. Under the provision, the arbitrator had no authority to: (1) determine questions of arbitrability; (2) change the provisions of the collective bargaining agreement; (3) substitute his discretion for that of either the union or the company; (4) change existing wage rates; (5) modify "disciplinary action"; (6) award money damages except back pay in case of wrongful discharge; (7) arbitrate proposals for amendments to or renewals of the agreement. We are here concerned with prohibitions 3, 5 and 6 *supra.*

The business of the company required it to transport materials of various sorts from its plant to work sites, and to that end utilized its own trucks which were loaded at the plant and later unloaded at the work sites. The company's business was irregular and often demanded the loading and dispatch of trucks on short notice and at unusual hours. As a result, employees of the company were called upon to work overtime.

The employees did not object to working overtime with overtime pay; but they did object to being called on short notice to work overtime where the work would disrupt their normal living schedules or plans that they had made for their off duty hours on particular days. Prior to the onset of the present controversy, the company ordinarily had been able to find enough employees who would volunteer to work overtime so that the employees who otherwise would have been called upon to do the work could go on about their own affairs.

The voluntary procedure became unreliable, however, and on July 24, 1974 the company posted a memorandum which informed employees that if they were not willing to work overtime when called on to do so, they would be replaced. On July 25, 1974 three employees were assigned to work overtime that same afternoon. For various reasons all declined to do so, and all were discharged even though they advanced fairly plausible reasons for their refusals on that day.

Having been discharged on July 25, the men filed grievances on the 26th. The procedures set forth in the collective bargaining agreement were followed, and the matter finally went to arbitration. The arbitrator rendered his opinion and made his award on February 25, 1975. He found that the company had a right to require the three grievants to work overtime on the 25th of the preceding July, so that their refusal to do so merited some discipline. However, he found their refusal not to be so serious as to merit discharge, and that in the circumstances "no more than a sixty-day suspension was warranted." The formal award of the arbitrator was that "Grievants are to be reinstated with all seniority rights and back pay less sixty days

and interim earnings." When the company reinstated the three men but refused to pay them back wages, the union instituted the action now before us on appeal under § 301 of the National Labor Relations Act, as amended, 29 U.S.C. §₁ 185.

 As the district court properly noted, the decision of an arbitrator will not be questioned by the courts as long as the arbitrator has acted within the scope of his authority as defined in a duly negotiated collective bargaining agreement. *Western Iowa Pork Co. v. Nat'l Brotherhood Packinghouse & Dairy Workers, Local No. 52,* 366 F.2d 275 (8th Cir. 1966). In determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts being resolved in favor of the arbitrator's authority. *Bonnot v. Congress of Independent Unions, Local No. 14,* 331 F.2d 355 (8th Cir. 1964). This approach reflects the strong national labor policy favoring arbitration as set forth by the Supreme Court in what has become known as the Steelworkers Trilogy. *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrier & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steel Workers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

In the instant case, the company and the union had agreed to settle disputes by binding arbitration. There was no doubt between the parties that the arbitrator was empowered to decide whether the three employees had been discharged for other than just cause. The primary issue is whether the arbitrator acted within the scope of his authority when he awarded reinstatement with partial back pay instead of either full back pay or no back pay at all. The collective bargaining agreement authorized the arbitrator to award "back pay in case of wrongful discharge," but also restrained him from substituting his own discretion for that of the company or modifying the company's disciplinary action.

The district court determined, and we agree, that the arbitrator found implicitly that the discharges were without just cause. The arbitrator concluded that the discipline imposed by the company "was out of all proportion to the misconduct involved and the circumstances surrounding it," and warranted no more than a sixty day suspension. Clearly, he assessed the company's action as being unjustified.

 We disagree with the district court, however, in its characterization of the arbitrator's award of reinstatement less sixty days back pay as a "suspension" for sixty days.[3] We believe that the district court misconstrued the arbitrator's order. We view the arbitrator's reference to "suspension" being an appropriate procedure as simply pointing up the proposition that the discharges were not in fact warranted and were thus "wrongful." The arbitrator's discussion indicated that he considered this case to be one which would have been particularly conducive to the company's application of "progressive discipline," including reprimand and suspension prior to discharge.[4] However, he made this observa-

---

**3.** The district court reasoned that the arbitrator's award, interpreted as a suspension, necessarily included a lapse of seniority rights as well as back pay. It found the award with respect to the lapse in seniority rights to be in excess of the arbitrator's authority, while the lapse in back pay was acceptable under the terms of the agreement. The district court thus ordered the "suspension" awarded by the arbitrator vacated insofar as the sixty-day lapse in seniority rights, but directed full compliance with the remainder of the award, *i. e.,* the restoration of full seniority, and back pay less that due for a period of sixty days.

**4.** The arbitrator found that the grievants' refusal to work while utilizing the grievance procedure constituted misconduct which merited some discipline. He noted that effective measures might have been employed by imposing progressively greater penalties before applying the extreme sanction of discharge. Such a response to the employees' actions would have been rehabilitative in nature, tending to discourage repetition of their offense. The company, however, did not react this way. Instead, it operated from the premise that any misconduct on the part of an employee that would warrant discipline was sufficient to provide just cause for discharge. We reject that

tion only in his written opinion; the arbitrator's award itself made no mention of "suspension" in any form whatsoever. There is a significant distinction to be recognized between the opinion of an arbitrator and the award he actually renders in circumstances such as these. We conclude that the arbitrator did not substitute a self-determined suspension for the company's discharge, but did no more than award wrongfully discharged employees reinstatement with back pay which was within his authority to do under the collective bargaining agreement.

■ That the amount of the award was not full back pay but back pay less that due for sixty days calls for consideration of the magnitude of the arbitrator's authority to award back pay as it is explicitly set forth in the collective bargaining agreement. The company contends that the arbitrator was not authorized to award partial back pay on grounds that the agreement prohibited him from making any determination other than whether the discharges were for just cause. Under this rationale, a finding that just cause did not exist obligated the arbitrator to reinstate the grievants either with full back pay or with no back pay at all. Accordingly, it is argued, an award of partial back pay was improper in that it placed the disciplinary action in the discretion of the arbitrator, exceeding his authority under the agreement.

We cannot accept appellant's all or nothing position as to the amount of back pay the arbitrator was empowered to award. Although the relevant provision of the collective bargaining agreement states that the arbitrator may award monetary damages for back pay in case of wrongful discharge, it is silent with respect to the amount of back pay allowable. The union maintains that the arbitrator was authorized to remedy a wrongful discharge by awarding any amount up to full back pay. We find this to be the most reasonable interpretation of the arbitration provision in this particular agreement.

The parties could have negotiated a contract designed to confine the arbitrator's power to awards of full back pay or no back pay exclusively. *Cf. Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co.*, 330 F.2d 562 (8th Cir. 1964). The agreement before us does not reflect such a bargain. The absence of express limitations on the amount in effect left with the arbitrator a narrow discretionary authority to determine how much back pay was appropriate. In awarding back pay less that due for sixty days, the arbitrator neither modified the disciplinary action of the company nor substituted his own discretion for that of the company, but rather operated within the parameters of power implicitly bestowed upon him by the collective bargaining agreement.

The order entered by the district court is affirmed.

---

premise. In any civilized employer-employee relationship there is an implicit recognition that not every act of insubordination or misconduct ethically justifies an employer in firing the employee in question who may have been a faithful and diligent employee for years. In fact, one of the employees here involved had worked for the company for eighteen years. If "just cause" means what the company apparently contends, the arbitration of a discharge grievance would benefit no employee unless his conduct and performance had been perfect. Such a construction of the "just cause" provision in the agreement would emasculate it.