**AVON PRODUCTS, INC., Appellant,**

v.

**INTERNATIONAL UNION, UNITED AUTO WORKERS OF AMERICA, AFL–CIO, LOCAL 710, Appellee.**

**No. 18777.**

United States Court of Appeals Eighth Circuit.

Dec. 4, 1967.

Earl J. Engle, of Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for appellant; Lawrence R. Brown, Kansas City, Mo., of the same firm, was with him on the brief.

James E. Youngdahl, of McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for appellee; C. David Whipple, of Krings, Stewart, Whipple, Mauer & Eisler, Kansas City, Mo., was with him on the brief.

Before VAN OOSTERHOUT, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Appellant seeks to reverse a decision of the District Court ordering: (1) That the parties submit certain grievances to arbitration. (2) That the arbitrator determine any dispute as to the form of the question to be submitted. (3) That the first arbitrator selected determine whether the grievances shall be heard by one or more arbitrators. (4) That the first arbitrator resolve any and all questions or procedure which cannot be resolved by the parties.

(1) The collective bargaining agreement defines a grievance as "any complaint, disagreement or difference of opinion between any employee and the company which concerns the interpretation or application of a specific provision of [the] agreement."

An employee having a grievance is obligated to make an honest effort to settle it with his supervisor and is given the right to have a union committeeman accompany him when the grievance is discussed with his supervisor.

If the employee and the supervisor cannot agree on a settlement, the employee is required to report the grievance to the union committee in writing. The union committee then has the responsibility of making a detailed investigation. If the union committee decides that the grievance should be carried further, it is required to notify the plant superintendent in writing and to make every effort to settle the dispute with him. If the dispute is not then settled, it "may [1] be submitted to arbitration" as set forth below.

"Section 3. It is agreed that matters to be submitted to arbitration must genuinely involve the interpretation or application of a specific provision of this Agreement and questions of arbitrability will not be submitted to arbitration. Grievances involving matters reserved exclusively to the Company by Section 1 of Article III hereof, and all other management rights which are not abridged by a specific provision of this Agreement, are not subject to the grievance or arbitration procedure.

"Section 4. Matters to be submitted to arbitration shall be referred to an arbitrator to be chosen by the Union and the Company. * * * The arbitration proceeding will be commenced as expeditiously as possible to render a decision. The written decision of the arbitrator shall be final and binding upon the parties hereto. The arbitrator shall have no power to add to or subtract from or modify any of the terms of this Agreement. The expense incident to the services of the arbitrator shall be shared equally by the Company and the Union.

"Section 5. There shall be no suspension of work by strike, or lockout, while negotiations are in progress over

1. Judge Blackmun discussed the effect of the word "may" in a similar arbitration clause in Bonnot v. Congress of Independent Unions Local #14, 331 F.2d 355, 359–360 (8th Cir. 1964):

"* * * The obvious purpose of the 'may' language is to give an aggrieved party the choice between arbitration or the abandonment of its claim. The presence of this or similar language has not prevented the conclusion that a claim, if pressed, is compulsorily subject to arbitration. See American Mfg. Co., supra, p. 565 of 363 U.S., 80 S.Ct. 1343, 4 L.Ed. 2d 1403, where the contract provided that differences 'may be submitted', and Drake, supra, p. 257 of 370 U.S., p. 1349 of 82 S.Ct., 8 L.Ed.2d 474, footnote 2, where the contract read, 'either party shall have the right to refer the matter to arbitration'. The Fifth Circuit has flatly rejected the union's argument. Deaton Truck Line, Inc. v. Local 612 etc., International Bhd. of Teamsters, 314 F.2d 418, 422 (5 Cir. 1962). We agree. If either Employees Labor Ass'n [etc.] v. Proctor & Gamble Mfg. Co., 172 F.Supp. 210, 214 (D.Kan.1959), or Wisconsin Motor Corp. v. Wisconsin Employment Relations Bd., 274 Wis. 85, 79 N.W.2d 119, 124 (1956), contains any implication to the contrary, we only note that both were decided before American Mfg. Co. and Drake. We follow the later federal precedents we have cited."

any difference that may arise hereunder, and all matters covered by this Agreement shall continue unchanged pending such final determination.

"Section 6. The Company and the Union recognize that complaints or grievances of a minor nature usually need not be processed immediately, and consequently, should not be processed at times which will interfere with work to be performed. It is further recognized, however, that some complaints or grievances are of sufficient import- ance to warrant prompt processing, and with respect to same, a committeeman, after first obtaining permission from his immediate supervisor, shall be granted sufficient time without loss of pay to discuss the matter with the employee filing the written grievance and with that employee's supervisor. Members of the Union committee (not to exceed the chairman and one committee member) shall not suffer any loss of pay for time lost from regular working hours while attending grievance meetings with the plant superintendent and, so long as such meetings are not of such duration and frequency as to unduly interfere with Company production, they shall be scheduled during regular working hours."

The grievances and the procedural steps taken to resolve them can be briefly summarized:

*The Blair grievance.*[2] Hazel Blair contended that the company violated Article IX, § 2(a) of the contract by denying her the right to have a committeeman present when she discussed a grievance with her immediate supervisor. Her foreman answered that employees have a right to present individual grievances without the right of the presence of a union representative; and that while Article I, § 2(a) gives the employee the right to have a committeeman present, § 6 of the same Article provides that grievances of a minor nature will be processed at times which will not interfere with the work to be performed, and that this was a minor grievance.

When the parties were unable to resolve the dispute through the grievance procedure, the union made a written request that the grievance be submitted to arbitration. The company objected to the form of the question proposed by the union, so the union redrafted it to read as follows: "[Did] the Company [violate] the Agreement * * * in refusing Hazel Blair the right to present her grievance to her Supervisor on December 4, 1964? [Did] the Company [violate] said Agreement by refusing to allow * * * Hazel Blair the right to have a Committeeman present when she attempted to discuss her said grievance with her Supervisor on December 4, 1964?

The company again refused to arbitrate the grievance contending that the form of the question suggested by the union presupposed that Hazel Blair was denied the right to present her grievance on December 4, 1964, and to have a committeeman present at the time of discussion. It further contended that her supervisor had discussed the grievance with her, that the committeeman had not asked his supervisor for a time to meet and discuss the grievance, that the grievance did not involve the interpretation or application of the specific provision of the contract and that the dispute was of a minor nature and, thus, interference with work was not justified.

*The Vedder, Burton and Harrington grievance.* The appellant temporarily assigned an employee having lesser seniority than any of the three grievants to a higher paying position on two different occasions; once for a period of four hours and once for a period of eight hours. The three employees filed a grievance alleging this fact and contending that the company violated Article

2. A substantially similar grievance on which arbitration was also refused was submitted by Ramona Hoover. It will not be detailed here.

IV, Section 3, page 2, of the agreement by so doing.

When the parties were unable to arrive at a settlement of this dispute, the union proposed that the following question be submitted to arbitration. "[Did] the Company [violate] Article IV, Sec. 3, * * * by placing [an] employee * * of lower seniority than the Grievants: * * * one of whom (person with highest seniority) should have been placed in said higher job classification, in accordance with said Art. IV, Sec. 3; * * *."

The company declined to arbitrate this grievance on the grounds: that the question presupposed a disputed fact by concluding that one of the grievants should have been placed in a higher job classification; that the question assumed that Article IV, Section 3 of the Agreement was applicable to temporary assignments; and that even if Article IV, Section 3, was applicable, it was not clear that any of the grievants should have been placed in the higher job classification for seniority does not prevail unless ability and dependability of employees are relatively equal; that the question was ambiguous because the union, by submitting it, was attempting to arbitrate three grievances in one, i. e., it was alleging that one of the grievants (without designating which one) had a complaint against the company; finally, that the grievance should be dismissed as they involved only seventy-two cents.

*The Harrison grievance* read as follows:

"* * * The company contends I overstayed my leave of absence. I have been on a disability leave from the company for some time and my leave, in the past, has been extended by the company upon receipt of a statement by my doctor. In this instance Mr. Houston told me the statement he had received from the doctor was not acceptable; therefore, I was discharged.

"I contend the statement issued by the doctor was proper under Article IV, Section 4 of the agreement, and ask for reinstatement without loss of seniority and also that my disability leave be extended."

After the union and the company were unable to resolve the dispute, the union proposed arbitration. After some discussion with the company as to the wording of the issue to be submitted to arbitration, the union modified the form of its proposal and requested the following question be submitted to arbitration:

"* * * [W]as Helen Harrison entitled to have her leave of absence extended beyond 11/21/64? If so, then she is entitled to continue to be an employee of Avon Products, Inc. If not, then her seniority was broken and she is no longer an employee of Avon Products, Inc."

The company declined to arbitrate this grievance on the grounds that the contract set forth the procedure to be followed to obtain a leave of absence for medical reasons, and that Helen Harrison failed to report to work at the expiration of her leave and did not attempt to obtain an extension of her approved leave until after it had expired.

■ The trial court properly held that each of the grievances must be submitted to arbitration. The arbitration clause is a broad one, it clearly covers the Blair and Harrison grievances, and does not clearly exclude the Vedder, Burton and Harrington grievances. Thus, all must be submitted to arbitration. United Steelworkers of America v. Warrior & G. Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Brick & Clay Workers of America v. A. P. Green Fire Brick Co., 343 F.2d 590 (8th Cir. 1965); Minnesota Joint Bd., Amalgamated Clothing Wkrs. of America v. United Garment Mfg. Co., 338 F.2d 195 (8th Cir. 1964); Builders Ass'n of Kansas City v. Greater Kansas City Lab. D. C., etc., 326 F.2d 867 (8th Cir. 1964), cert. denied, 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186 (1964); Heiner, Express Exclusions from Arbitration—Accommodating the Consensual with the Non-Consensual, 1 Ga.L.Rev. 363 (1967).

■ It cannot be said that the grievances are clearly frivolous; thus, neither the District Court nor this Court can examine the merits of the dispute to determine arbitrability. United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); [3] Smith & James, The Supreme Court and Labor Dispute Arbitration: The Emerging Federal Law, 63 Mich.L.Rev. 751 (1963).

■ Whether Hazel Blair had discussed the grievance with her supervisor, whether the committeeman had requested time to meet and discuss the grievance, whether the dispute was of a minor or major nature, whether Vedder, Burton or Harrington had more seniority than the employee placed in the job which they felt ought to be filled by one of their number, whether the ability of any of the grievants was equal to that of the employee placed temporarily on the job, whether Article IV, § 3 of the contract, requires the company to fill vacancies of the type created here on a seniority basis, and whether Mrs. Harrison had submitted a doctor's statement in accordance with the provisions of Article IV, § 7 of the collective bargaining agreement— these are all questions which go to the merits of the dispute and must be answered in the arbitration proceeding.

(2) The appellant argues that it cannot be required to submit any of the grievances to arbitration as the form in which the union posed the questions to be submitted to arbitration did not correctly state the precise issue in dispute. It argues, in the alternative, that even if it can be required to arbitrate the grievances, that this Court should frame the questions to be submitted.

We do not agree.

■ When the parties signed the collective bargaining agreement, they agreed to submit complaints, disagreements or differences of opinion between any employee and the company, which genuinely concerned the interpretation or application of a specific provision of the agreement, to arbitration. They did not reserve to themselves the right to determine the precise language to be used in submitting each dispute to arbitration. Indeed, the inclusion of such a clause would be an indication that they did not intend to submit all such grievances to arbitration, and would indicate that the parties were reserving to themselves the right to determine the disputes, if any, that they would arbitrate. To imply such a reservation here would be contrary to the federal common law encouraging the arbitration of labor disputes and cannot be sustained. See, Independent Soap

3. In the *Steelworkers'* case, the Supreme Court teaches:

"The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values which those who are not a part of the plant environment may be quite unaware."
Id. at 568, 80 S.Ct. at 1346 (Footnotes omitted.).

The arbitration provision in this case read:
"Any disputes, misunderstandings, differences or grievances arising between the parties as to the meaning, interpretation and application of the provisions of this agreement, which are not adjusted as herein provided, may be submitted to the Board of Arbitration for decision.
* * *
"The arbitrator may interpret this agreement and apply it to the particular case under consideration but shall, however, have no authority to add to, subtract from, or modify the terms of the agreement. Disputes relating to discharges or such matters as might involve a loss of pay for employees may carry an award of back pay in whole or in part as may be determined by the Board of Arbitration.
"The decision of the Board of Arbitration shall be final and conclusively binding upon both parties, and the parties agree to observe and abide by same.
* * * *"
Id. at 565, n. 1, 80 S.Ct. at 1345.

Workers of Sacramento, Cal. v. Proctor & Gamble Mfg. Co., 314 F.2d 38 (9th Cir.), cert. denied, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963).[4]

In so holding, we do not, of course, imply that the union's statements of the disputes must be accepted. We simply sustain the holding of the trial court that as each of the disputes presents a question of interpretation or application of a provision of the collective bargaining agreement which the parties have previously agreed to submit to arbitration, one party cannot frustrate the arbitration process by refusing to agree on the form of the issue to be submitted to arbitration.

While there is authority to support the plaintiff's contention that this Court should frame the precise issue to be submitted to arbitration, Socony Vacuum Tanker Men's Ass'n v. Socony Mobil Oil Co., 369 F.2d 480 (2d Cir. 1966), it is our opinion that this matter is one to be resolved by the arbitrator. In framing the disputes, the arbitrator will be limited by the language of the contract. We presume that he will not frame the issue in such a way as to decide matters beyond his authority. If he does so, the aggrieved party is not without relief. See, International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Association, 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236, Nov. 6, 1967.

(3) The decision of the District Court, that the first arbitrator selected should determine whether all of the stated grievances should be submitted to one arbitrator or to several arbitrators, is a more difficult one. While it has not been resolved by the Supreme Court or this Court, at least four District Courts have considered the question and have reached the decision that the matter is one to be determined by the arbitrator. UAW v. Robertshaw Controls Co., 63 LRRM 2348 (S.D.Ohio 1966); Fitch-

burg Paper Company v. MacDonald, 242 F.Supp. 502 (D.Mass.1965); Local 469 Internat'l Bro. of Teamsters v. Hess Oil & Chem. Corp., 226 F.Supp. 452 (D.N.J. 1964); Traylor Eng. & Mfg. Div. of Fuller Company v. United Steelworkers of America, 220 F.Supp. 896 (E.D.Pa. 1963).

In *Fitchburg,* the court said:

" * * * The only issue, whether there should be one arbitration proceeding or two is a procedural one. The question is not whether these grievances shall be arbitrated or not, but only how the arbitration is to be conducted. It is a question which, as plaintiff contends, must be decided by interpretation of the terms of the contract, since plaintiff's duty to submit to arbitration arises solely out of the arbitration agreement. The contract provides in Section 26, par. 1, that 'Should differences arise between the Company and the Union and its members employed by the Company as to the meaning and application of this agreement * * *' these differences are to be settled by a procedure which includes arbitration as the final step. Under this broad provision the dispute between the parties as to the meaning and application of the arbitration clause is one which they have agreed should ultimately be settled by arbitration.

\* \* \* \* \* \*

"Plaintiff advances the argument that the question should not be left to the arbitrator because he will be deciding a question in which he has a direct pecuniary interest. What plaintiff envisions is that the arbitrator may hear the whole dispute and then render a decision in which he holds that plaintiff is entitled to separate arbitrations, and then proceed to render separate decisions on the two grievances and collect fees for conducting two or even three arbitrations. However, it seems

---

4. There, the arbitration clause provided that "the Company and the Union will stipulate the grievance jointly in writing

and the Board will act only on the stipulation." Despite this language, the Court reversed the District Court.

highly unlikely that an arbitrator would hold that the two grievances were not properly before him in a single proceeding and nevertheless decide them both. Apart from such an unlikely procedure, a decision by the arbitrator in plaintiff's favor will result in separate proceedings and there is nothing to indicate that the arbitrator making the decision would have any such assurance that he would be named as arbitrator in both proceedings so that his decision between a combined proceeding or separate one would be influenced by any calculation as to his personal financial interest."

242 F.Supp. at 505.

In *Hess,* the court also considered the issue to be one of procedure arbitrability, and went on to say:

"The question posed here is similar to that which would be presented to this Court upon the application of a party to consolidate two cases for trial under the provisions of Rule 42(a) of the Federal Rules of Civil Procedure. The criterion for consolidation under that Rule is the involvement in the cases of a common question of law or fact. Whether such consolidation should be allowed is a question for the Court, in its sound discretion, to determine. See Kelly v. Greer, 3 Cir. 1961, 295 F.2d 18. It is obvious that all three of the grievances referred to in the complaint in this action involve similar questions of fact and possibly also of law. The Court will take judicial notice that a joint hearing and determination by an arbitrator with respect to the three grievances will involve less delay and less expense than the aggregate of both involved in separate hearings of each. The convenience of the parties and the expedition of adjustment, looking to the early achievement of employment peace, are further considerations which would justify an arbitrator in determining that the three grievances should be heard together rather than separately. This Court may not and will not deprive the arbitrator of the opportunity and obligation to determine that question. * * * "

226 F.Supp. at 455–456.

In *Traylor,* the union submitted several *unrelated* grievances to arbitration. An arbitrator was selected by the parties to hear the "multiple grievance case." The company objected to the submission of the grievances to a single arbitrator, but it did not formally submit to the arbitrator the question of its jurisdiction to hear more than one grievance. Instead, it subsequently submitted for arbitration, as a separate issue, the power of an arbitrator "under the collective bargaining agreement between the parties to hear multiple grievances." Another arbitrator was selected by the parties to hear this issue. The first arbitrator fixed August 27, 1963, for the hearing of the multiple grievance case, and the second arbitrator fixed September 10, 1963, for the hearing of the "threshold case." The company sought to enjoin the union from proceeding with the multiple grievance case before the threshold case had been determined by the second arbitrator. The court, in resolving this issue, stated:

"In seeking to restrain the hearing of the 'multiple grievance case' and in claiming the right to priority of resolution of the 'threshold case', Company has done no more than to articulate a dispute concerning the meaning of the agreement. * * * Their disagreements constitute disputes concerning the meaning of the agreement. The parties have committed all such disputes to arbitration. Having determined that the dispute before me comes within the purview of the parties' agreement to arbitrate, I can proceed no further."

220 F.Supp. at 900–901.

■ We believe that the decisions of the District Courts cited above and of Judge Oliver in this case are sound, and that the first arbitrator must determine whether the grievances are to be resolved in a single or in multiple proceedings. The arbitration clause is not so clear that

it can be said with positive assurance that disputes must be submitted individually, nor is it so clear that it can be said that the union has a right to insist on hearing all grievances in one proceeding.[5]

Nor do we express an opinion on the issue. The numerous decisions on this question by arbitrators adds substance to our holding, however, that the issue is one to be decided by arbitration and not by the courts.[6]

(4) While the language of the District Court requiring that future procedural disputes be submitted to arbitration is broad, it is no broader than necessary. The parties had been unable to agree on any of the procedural matters concerned with the resolution of the grievances. The District Court could properly find that they were not likely to do so in the future, and did so. The District Court was justified in expressing its mandate in broad terms to avoid future delays and frustration of the grievance and arbitration procedure.

We deny the appellee's request to award it full costs and expenses of this appeal as damages. While we have affirmed the decision of the lower court,

we cannot say that the appeal was frivolous. It involved a number of substantial and doubtful legal questions. See, Hawkeye—Security Insurance Company v. Davis, 277 F.2d 765 (8th Cir. 1960).

Affirmed.

5. While the word "grievance" is used in the singular in § 2, subdivisions a. and c., it is used in the plural in subdivision d. of the same section.

The word "matter" is also used in the singular and the plural. Thus, § 2, subdivision d., stated: "If the discussion between the plant superintendent and union shall not result in a satisfactory agreement, the parties agree, the *matter* may be submitted to arbitration as hereinafter provided;" but § 3 provides: "It is agreed that *matters* to be submitted to arbitration must genuinely involve the interpretation or application of the specific terms of the agreement and *questions* of arbitrability will not be submitted to arbitration;" and § 4 recites, "*Matters* to be submitted to arbitration shall be referred to an arbitrator to be chosen by the union and the company." (Emphasis added.)

6. For decisions of arbitrators holding that a party to a contract can require that a

single arbitrator decide multiple grievances, see, Interchemical Corporation and Oil, Chemical and Atomic Workers International Union, Local 8–417, 65–2 ARB ¶8476 (1965) (Altieri, FMCS); Johnson Bronze Company and United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union No. 69, 41 LA 961 (1963) (Dworkin, FMCS); Armstrong Cork Company and United Rubber, Cork, Linoleum & Plastic Workers of America, Local 363 (CIO), 23 LA 13 (1954) (Williams, FMCS). Contra, Crown Zellerbach Corporation and International Brotherhood of Pulp, Sulphite and Paper Mill Workers, Local 928, 65–2 ARB ¶8573 (1965) (Carmichael); Remington Rand Univac and International Broherhood of Electrical Workers, Local Union No. 2047, 42 LA 65 (1964) (Lockhart).