**GEOFFREY BEENE, INC., Plaintiff,**

v.

**NEW YORK COAT, SUIT, DRESS, RAINWEAR AND ALLIED WORKERS' UNION, AFL–CIO, Defendant.**

**No. 82 Civ. 8241.**

United States District Court, S.D. New York.

May 3, 1983.

Shea & Gould by Vincent D. McDonnell, George T. Hutton, Richard F. Czaja, Jerrold Goldberg, Megan L. Levine, New York City, for plaintiff.

Lewis, Greenwald & Kennedy by Nicholas F. Lewis, New York City, for defendant.

MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

This is an action by an employer against a union seeking to set aside and vacate an arbitration award. The Union has cross-moved to confirm the award. Federal jurisdiction is founded on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), the Federal Arbitration Act, 9 U.S.C. § 10 (1976), and 28 U.S.C. §§ 1337, 2201 (1976).

Plaintiff Geoffrey Beene, Inc. is a New York corporation with its principal place of business in New York City. Defendant Union is an unincorporated labor organization which represents certain employees of Geoffrey Beene. The employer is a member of the Affiliated Dress Manufacturers, Inc. ("Affiliated"), an organization of employers which engages in labor negotiations with unions such as defendant. Affiliated entered into a collective bargaining agreement with defendant Union for a period covering June 1, 1979 to May 31, 1982. The construction of this agreement is at the center of this dispute.

Around 1972, plaintiff established a new line of clothing, to be produced by a subsidiary called Beene Bag, Inc. Beene Bag was also incorporated in New York, had its principal place of business within New York City, and was a member of Affiliated and therefore bound by the terms of the collective bargaining agreement with defendant. In 1981 Beene Bag ceased its operations. Soon thereafter plaintiff entered into a "licensing" agreement for the production and marketing of the Beene Bag line with Bobbie Brooks Inc., an Ohio corporation doing business in Ohio. Bobbie Brooks is not a party to the collective bargaining agreement.

On October 26, 1981, the Union filed a complaint against Geoffrey Beene, alleging that Beene had "violated the Collective Agreement by licensing The Beene Bag trade name thereby threatening loss of employment in the employer's inside shop and in the shops of its contractors." (Complaint, Ex. B). The matter was taken to arbitration before the contractually designated arbitrator, Milton Rubin. An evidentiary hearing was held on February 24, 1982, during which both sides were represented by counsel. On March 30, 1982, Rubin issued an interim opinion which ruled that Geoffrey Beene had violated the collective bargaining agreement by entering into its licensing agreement with Bobbie Brooks. Specifically, Rubin found that Geoffrey Beene violated Article Fourteenth of the collective agreement, which prohibits reorganization of the factory without the Un-

ion's consent. He also found a violation of Article Twenty-Fourth, Section 5, which prohibits Geoffrey Beene from using contractors outside the Northeastern United States, and Article Thirty-Sixth, a provision that restricts shop movement.

By letter dated April 16, 1982, Geoffrey Beene requested that Rubin vacate or modify his findings on various grounds. Rubin denied the Beene request to vacate or modify in a second opinion dated September 21, 1982. He specifically found that Beene Bag was a subsidiary of Geoffrey Beene, and that a jobber/contractor relationship existed between the two entities. Rubin further ruled that, in essence, Geoffrey Beene closed the doors of its subsidiary in order simply to replace Beene Bag with another contractor, Bobbie Brooks, that was not bound by the collective bargaining agreement. While the "licensing" agreement between Geoffrey Beene and Bobbie Brooks was not labeled a jobber/contractor agreement, Rubin noted that Geoffrey Beene retained "extensive control over the design of the Beene Bag garments," as well as control over "advertising, sales and production." The arbitrator has not as yet considered a remedy for these violations.

## I. *Authority of the Arbitrator*

■ Plaintiff's first ground for vacating or modifying the arbitrator's decision is that Rubin acted beyond the scope of his authority in scrutinizing the licensing agreement. *See* § 10 of the Federal Arbitration Act, 9 U.S.C. § 10(d) (1976). Article Thirty-Fifth of the collective agreement provides for arbitration of:

[a]ny and all complaints, disputes, controversies, claims or grievances whatsoever arising between the parties hereto or between a worker and an employer which relate to or are connected with or involve questions of interpretation or application of any Article of this agreement, or which directly or indirectly arise under, out of, or in connection with or any manner relate to this agreement or the breach thereof, or the acts, conduct or relations between the parties or their respective members . . . .

Plaintiff's Exhibit A, at 46–47. As defendant notes, this clause is expansive. It plainly provides for arbitration of claims relating to the collective agreement's prohibition against contracting work outside the Northeastern United States. Plaintiff points out, however, that no mention is made of termination of a business or the licensing of trademarks, and argues that those issues are therefore nonarbitrable.

Plaintiff's suggested approach in evaluating the authority of arbitrators is unacceptably inflexible in light of the so-called "Steelworker's Trilogy." *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), for example, involved a broad arbitration clause similar to the one in the present case. *See* 363 U.S. at 565 n. 1, 80 S.Ct. at 1345 n. 1. The grievance in the case involved an injured worker who, after being compensated under the assumption that he was "'permanently partially disabled,'" sought reinstatement. The employer refused to arbitrate the request and the union sought an order to compel arbitration. The district court found that the worker was estopped from filing the grievance; the circuit court affirmed, holding that the petition was "patently baseless" and not subject to the collective bargaining agreement. The Supreme Court, however, reversed.

Emphasizing the policies behind congressional preference for extrajudicial forums, the Court stated:

> [The courts' function] is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator....
>
> The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, *or determining whether there is particular language in the written instrument which will support the claim.*

363 U.S. at 568 (footnote omitted) (emphasis added). The Court seemed to lay down a simple test for determining whether an issue is subject to arbitration: if the union claims that an employer has violated a "specific provision" of the collective bargaining agreement, and the employer contends that it has not, it is *necessarily* "a dispute between the parties as to 'the meaning, interpretation and application' of the collective bargaining agreement."

*United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), involved layoffs of a company's employees due to contracting work to other companies, a fact pattern similar to Rubin's characterization of what happened in this case. Whether the dispute over the layoffs was arbitrable turned on whether the issue was excluded by a collective agreement provision that "matters which are strictly a function of management shall not be subject to arbitration." 363 U.S. at 576, 80 S.Ct. at 1349. The lower courts held that decisions to lay off employees and replace them with outside contractors was a nonarbitrable, business decision under the exclusionary clause. The Supreme Court again reversed. Stressing that negotiators are aware of the necessarily general nature of the language of arbitration agreements, the Court found that "[a]part from matters that the parties specifically exclude, all of the questions on which the parties disagree must ... come within the scope of the grievance and arbitration provisions of the collective agreement." 363 U.S. at 581, 80 S.Ct. at 1352 (emphasis added). This language precludes plaintiff's assertion that, because licensing and termination were not mentioned in the agreement, those items were intended to be excluded. There must be "positive assurance" that no interpretation of the agreement renders the issue arbitrable; Geoffrey Beene offers only the silence of the collective agreement.

Plaintiff relies on the following language from *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960):

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When an arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

363 U.S. at 597, 80 S.Ct. at 1361. But when the Court formulated this "draw-its-essence" test, it was referring to a possibility that the arbitrator looked solely to outside law, rather than primarily to the collective agreement, in making his decision. A mere ambiguity as to the source of the decision should *not* be enough to upset his determination. 363 U.S. at 598, 80 S.Ct. at 1361. The Court stressed that "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." 363 U.S. at 599, 80 S.Ct. at 1362; *see also Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2d Cir. 1982). Rubin's opinion is replete with references to the collective agreement. Rubin drew far more than the "essence" of his opinion from the collective agreement, and he clearly applied that agreement when he rendered his decision.

Curiously Geoffrey Beene is before this Court *after* submitting to the arbitration. Most cases in this area come before courts in the posture of one party seeking to compel the other party to arbitrate a grievance. Nor can plaintiff claim surprise at the outcome reached by the arbitrator. Geoffrey Beene contends that it only agreed to submit to Rubin the question whether it had violated the collective agreement by Beene Bag's going out of business. The Union's complaint posed the broader question whether termination of Beene Bag and the licensing arrangement with Bobbie Brooks constituted a violation of the collective agreement. Rubin stated that it was his practice in such situations to decide the issue as stated in the union's complaint. Apparently, no objection was then made that any such determination would necessarily be beyond Rubin's power. Rubin was admonished not to exceed his powers, to which Rubin, of course, assented. *See* Plaintiff's Exhibit E, at 2–3. But plaintiff could have been more specific, since all the parties knew that the issue Rubin intended to decide was the appropriateness of the licensing scheme.

Plaintiff now contends that Rubin was restricted by the scope of the question which it submitted. No court has adopted such a narrow approach, however, and the arbitrator's answer to this objection in his supplemental opinion of September 21, 1982 is correct:

An employer may not unilaterally determine what issues may be arbitrated. To allow this would permit an employer to circumscribe the authority given to the Impartial Chairman by Article Thirty-Fifth of the Collective Agreement by refusing to submit clearly arbitrable issues of contract interpretation to hearing. I cannot let the authority of the Impartial Chairman be so limited and I accordingly find the employer's position to be without merit.

Plaintiff's Exhibit E, at 3. Plaintiff cites *Milwaukee Typographical Union v. Newspapers, Inc.*, 639 F.2d 386 (7th Cir.), *cert. denied*, 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981), and *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299 (2d Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963), in support of the proposition that the arbitrator is limited to the question submitted. Nowhere in those cases, however, is it mentioned that the employer had submitted an issue beyond which the arbitrator went. On the other hand, cases cited by defendant, though not from the Second Circuit, weigh heavily in support of its position. For example, in *Avon Products, Inc. v. International Union, UAW*, 386 F.2d 651 (8th Cir.1967), the court stated that an employer, in the collective agreement, must

expressly reserve the right to frame the issue in order to be able to dictate what the arbitrator is to decide. 386 F.2d at 656.

## II. *Enforceability of the Arbitrator's Decision*

■ Geoffrey Beene contends that Arbitrator Rubin's award is unenforceable in that it amounts to a directive that Geoffrey Beene not do business with Bobbie Brooks, and as such constitutes a "hot cargo" agreement in violation of § 8(e) of the Labor Management Relations Act, 29 U.S.C. § 158(e) (1976). The Union concedes that the award enforces what amounts to a "hot cargo" agreement but counters that the award is protected by the garment industry proviso of § 8(e).

> Section 8(e) of the Act provides in part: It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void: ...
> *Provided further,* That for the purposes of this subsection and subsection (b)(4)(B) of this section the terms "any employer", "any person engaged in commerce or an industry affecting commerce", and "any person" when used in relation to the terms "any other producer, processor, or manufacturer", "any other employer", or "any other person" shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry: *Provided further,* That nothing in this subchapter shall prohibit the enforcement of any agreement which is within the foregoing exception.

29 U.S.C. § 158(e) (1976). The section thus prohibits agreements between unions and employers to the effect that employees will not handle the goods of certain employers, thus rendering their goods "hot cargo."

Congress, however, has exempted the garment industry from this prohibition. The reasons behind this exemption have been cogently described in *Jou Jou Designs, Inc. v. ILGWU,* 643 F.2d 905, 906–07 (2d Cir.1981). Congress recognized, that if garment unions were not allowed to prevent jobbers from farming out work to any subcontractor, the "sweat-shop" conditions that prevailed in the early twentieth century could once again flourish. Thus, unions and employers in the garment industry are permitted by law to agree, for example, that an employer will use only union subcontractors or only subcontractors in a certain area. In this manner, apparel unions are given important and exceptional power to secure agreements with employers that enable the unions to keep the terms and conditions of employment more humane and uniform.

Plaintiff argues that there are limits to the power of unions and employers to agree to control all aspects of garment manufacture. This is no doubt true. An employer cannot, for example, be forced to agree not to go out of business entirely. Furthermore, as Geoffrey Beene contends, an apparel manufacturer that happens to own a name with trade value must be free to license that name. These are, in fact, the circumstances that allegedly justify what the employer has done in this case: Beene Bag went out of business, which it had a perfect right to do; and then Geoffrey Beene licensed the Beene Bag name to another, entirely independent company, Bobbie Brooks, so that Bobbie Brooks could make and sell its own Beene Bag garments. Even assuming that Geoffrey Beene and the Union agreed in some way to prevent these events from taking place, as Arbitrator Rubin found they did for the reasons described below, plaintiff contends that such an agreement is unlawful, citing particularly the decision in *Botany Industries, Inc. v. New York Joint Bd.,* 375 F.Supp. 485

(S.D.N.Y.), *vacated as moot*, 506 F.2d 1246 (2d Cir.1974) (per curiam).

The preliminary issues of law implicit in plaintiff's contentions need not be reanalyzed here. Judge Edelstein has explained why the federal courts must always be a forum for reviewing alleged violations of federal labor law, even if an arbitrator has authoritatively construed an agreement between the relevant parties to permit or require such a violation. *See* 375 F.2d at 488–493. In this respect, *Botany* has been cited with approval. *See, e.g., Jackson Purchase Rural Elec. Cooperative Ass'n v. Local Union 816,* 646 F.2d 264, 267 (6th Cir.1981). Beyond these preliminaries, however, plaintiff has no case for vacating the award, either on the facts as they exist in this record, or on the theoretical facts that plaintiff has sought throughout these proceedings to import into the dispute.

Arbitrator Rubin has not questioned plaintiff's right to close down Beene Bag, and has even accepted as legally defensible the proposition that Geoffrey Beene could license the Beene Bag mark under terms that would immunize the action from union pressure. But on the basis of what he termed uncontroverted evidence, the Arbitrator found that plaintiff's and Beene Bag's operations were not separate, but rather were integrated. Furthermore, the Arbitrator found that, in terminating its own manufacture of the Beene Bag line, plaintiff sought to continue that line through a licensing agreement that effectively made the licensee, Bobbie Brooks, a jobber for plaintiff. While plaintiff has insisted on keeping its licensing agreement with Bobbie Brooks confidential, that 80-page document was found by the Arbitrator to retain to Geoffrey Beene full control over the quality, design, and merchandising of the Bobbie Brooks line, as well as a percentage of gross sales. Arbitrator Rubin found:

> Repeating my initial Award, I conclude that, contrary to the contentions of the Employer herein, this is not a simple case of one company closing its business. Instead this is an instance in which an employer closed its subsidiary which had been engaged in the manufacture of its sportswear collection and gave this work to another contractor. I therefore conclude that Bobbie Brooks, though nominally the licensee of Geoffrey Beene, in fact acts as a contractor with Geoffrey Beene as the jobber. I base this conclusion upon my analysis of the licensing agreement between those two firms. I find that Geoffrey Beene retains extensive control over the design of the Beene Bag garments now produced by Bobbie Brooks. In addition, Geoffrey Beene controls the advertising, sales and production of the garments bearing the Beene Bag label. This authority over the design, production and distribution of the Beene Bag garments is comparable to the control exercised by a jobber over a contractor in the more traditional jobber-contractor relationship. It is therefore evident that the relationship between Geoffrey Beene and Bobbie Brooks is one which comes within the unity-of-interest concept set forth in Article Twenty-Fourth of the Collective Agreement.

Plaintiff's Exhibit E, at 5–6. (footnote omitted).

No factual assertions in the affidavit offered by plaintiff, and no other evidence offered at this stage of the proceeding, in any way contravenes the Arbitrator's findings. *See* Affidavit of Thomas Carola (Feb. 17, 1983). Furthermore, an examination of the confidential licensing agreement between plaintiff and Bobbie Brooks confirms the Arbitrator's construction. Plaintiff's reliance, therefore, upon the theory espoused in *Botany* that a union cannot require an employer to agree to prevent a licensing of its product line, is without any evidentiary basis. Indeed, the claim is so lacking in evidentiary support that it is unnecessary here even to address the extent to which an employer would be entitled an evidentiary hearing in a District Court on similar claims where some basis might exist for the proposition that so little control over the licensee was retained that the licensor should no longer be termed an employer, jobber, or other operative in the apparel

trade intended to be covered by the § 8(e) proviso. Here, where no genuine dispute of material fact has been raised concerning the Arbitrator's relevant findings, no hearing would be necessary or proper. Employers could otherwise greatly delay the arbitration process in cases such as these, by insisting on hearings even where they have created licenses but surrendered little or no product control.

More fundamentally, plaintiff relies far too heavily on *Botany,* in light of the policies served by the proviso to § 8(e), as articulated in the authoritative decisions in *Jou Jou Designs, supra* and *Danielson v. Joint Board of Coat, Suit and Allied Garment Workers' Union, ILGWU,* 494 F.2d 1230 (2d Cir.1974). Botany, a men's clothing manufacturer, licensed the right to make boys' clothing under the "Botany" trademark to a firm called Levinsohn. Botany later acquired Levinsohn, which it operated separately, until it decided to terminate that operation, despite an agreement with the Joint Board that Botany would continue to make boys' clothing only in Joint Board shops. Judge Edelstein held that the agreement to make "Botany" boys' clothes only in Joint Board approved shops, was not protected by the proviso to § 8(e), and while he did not rule on the question, the reasoning of his opinion apparently would have led him also to invalidate the portion of the arbitrator's award that restricted licensing the "Botany" trademark to Joint Board shops. He explained this result (without referring to the then recently issued opinion in *Danielson*) on several bases, beginning with the premise that "it is quite clear that Congress intended the exemption to be an extremely limited one, restricted to employers and labor organizations who actively participate in the integrated process" of apparel manufacture. 375 F.Supp. at 495. He then concluded that Botany was not an "employer" in the apparel manufacturing process because, although it made men's clothes and totally owned Levinsohn, the latter was "a separate and distinct entity and not part of any integrated process of manufacture with Botany," in that Botany had "only" two of

its officers on the Levinsohn management team, and its sole control stemmed from a licensing agreement of the Botany name, for which it obtained royalties, and pursuant to which Botany-labelled goods could be sold. 375 F.Supp. at 497. Finally, he concluded that the union's agreement with Botany (as construed by the Arbitrator) could not be justified as an effort to preserve work under *National Woodwork Manufacturers Ass'n v. NLRB,* 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967), because the agreement's "true intent" was "to preserve work to the union as a whole and not the bargaining unit." 375 F.Supp. at 499 (footnote omitted).

■ While we have seen that Geoffrey Beene can gain no solace from *Botany* because its operations with Beene Bag were found always to have been integrated, and because of the extensive controls it continues to retain over the apparel manufacturing process of clothing bearing the Beene Bag mark, plaintiff's position would be untenable even if it could equate its position with Botany's. Apart from the fact that *Botany* was vacated as moot and therefore lacks precedential force, *see* 506 F.2d at 1247 & n. 1, the decision is at odds with the § 8(e) proviso in that the decision could be used by apparel manufacturers to avoid their duly bargained-for obligations. The § 8(e) proviso may have been "extremely limited," but only in the sense that it applies to a certain industry, not in the scope of the authority it confers to permit "hot cargo" agreements within the industry exempted. Once a manufacturer assumes control over the manufacture of a garment, whether through actual ownership and oversight, a jobber's contract, or an agreement to license the use of its name, that manufacturer becomes an employer with whom an apparel-industry union needs to be able to bargain under the § 8(e) proviso's protection. The owner of a trademark could of course so divorce itself from the process of manufacture, design, quality control, and merchandising, that it could establish that it is not engaged in the apparel business. But even a bona fide effort to do

no more than protect the economic value of a name may lead a trademark owner to perform or supervise functions of manufacture, design, quality control, or merchandising that are the very functions brought within the scope of lawful bargaining by the § 8(e) proviso.

The mere fact that a particular licensor may act without antiunion animus (as plaintiff here appears to have acted) is beside the point. If the mark's owner is allowed to avoid union pressure over the apparel manufacturing process merely because its controls over that process are the product of a licensing agreement, then the owner will be able to do so irrespective of the working conditions that its licensee may choose to permit. The Union claims "that the Geoffrey Beene licensing agreement is a harbinger of a new strategy to be used by garment industry designers and manufacturers seeking to avoid unionization." Defendant's Memorandum 20. This may or may not be true. But the rationale offered by plaintiff to justify its position, and its construction of *Botany,* could allow just such a process, despite Congress' clear intention to permit unions to use their economic power to prevent it. Finally, nothing in the § 8(e) proviso suggests that union efforts at work preservation must be aimed at protecting only the workers of a particular employer or contractor; to the contrary, the industry pattern, as recognized in *Danielson,* 494 F.2d at 1233, is to preserve work for the union as a whole.

Motion to vacate the award of the arbitrator is denied, and the cross-motion to enforce is granted. The arbitrator should proceed to consider appropriate forms of relief.

SO ORDERED.