A&A Maintenance Enterprise, Inc. v. Ramnarain

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

————————

August Term, 2020

(Submitted: November 25, 2020    Decided: December 16, 2020)

Docket No. 20-459

————————

A&A MAINTENANCE ENTERPRISE, INC.,

*Petitioner-Counter-Defendant-Appellant*,

—v.—

ALVIN RAMNARAIN, as President of Local 1102, Retail, Wholesale and Department Store Union, United Food and Commercial Workers,

*Respondent-Counter-Claimant-Appellee*.

————————

Before: CALABRESI, KATZMANN, and SULLIVAN, *Circuit Judges*.

————————

Appeal from an order of the United States District Court for the Southern District of New York (Briccetti, *J.*) denying the petition of employer A&A Maintenance Enterprise, Inc. ("A&A") to vacate an arbitration award and granting the cross-petition of Alvin Ramnarain – President of Local 1102 of the Retail, Wholesale and Department Store Union (the "Union") – to confirm the award. First, A&A argues that the arbitrator exceeded his authority by ruling on an issue

that was allegedly broader in scope than the issue that the Union described in its grievance letter to A&A. We reject this argument because, albeit worded differently, the issue that the arbitrator ruled on was substantially identical to the issue in the grievance letter. In so ruling, we hold that a party that has previously agreed to arbitrate a given dispute cannot frustrate the arbitration process simply by refusing to agree on the form of the issue to be submitted to arbitration. Second, A&A argues that the arbitrator exceeded his authority by ignoring the express terms of the collective bargaining agreement. We find that the arbitrator's interpretation of the collective bargaining agreement was more than colorable and therefore reject this argument. Accordingly, we **AFFIRM**.

––––––––––––

Perry Heidecker, Milman Labuda Law Group PLLC, Lake Success, NY, *for Petitioner-Counter-Defendant-Appellant*.

Matthew P. Rocco, Rothman Rocco LaRuffa, LLP, Elmsford, NY, *for Respondent-Counter-Claimant-Appellee.*

––––––––––––

PER CURIAM:

Petitioner-counter-defendant-appellant A&A Maintenance Enterprise, Inc. ("A&A") appeals from an order of the United States District Court for the Southern District of New York (Briccetti, *J.*) denying A&A's petition to vacate an arbitration award and granting the counter-petition of respondent-counter-claimant-appellee Alvin Ramnarain – President of Local 1102 of the Retail, Wholesale and Department Store Union (the "Union") – to confirm the award. For the reasons set forth below, we affirm.

2

## I. Background

Unless otherwise indicated, the following factual background is undisputed and drawn from the parties' submissions in support of and in opposition to the petition and the cross-petition at issue.

A&A is a corporation providing janitorial and maintenance services to owners and operators of commercial real estate and educational institutions. The Union is a labor organization that has historically represented the building service workers, groundskeepers, and mechanics at the Old Brookville campus of Long Island University ("LIU") with respect to matters concerning wages, hours, and other terms and conditions of their employment.

In 2016, LIU contracted out the janitorial, mechanical, and groundskeeping work at its Old Brookville campus to A&A. Under this arrangement, A&A became the employer of those workers and agreed to assume an existing collective bargaining agreement between LIU and the Union set to expire on August 31, 2017. In the summer of 2017, A&A and the Union engaged in negotiations and eventually entered into a successor collective bargaining agreement (the "CBA").

As relevant here, Article 2 of the CBA, titled "Union Security," requires that "all employees covered by this Agreement and hired on or after its execution or

3

effective date, shall after thirty days from the beginning of such employment . . . become and remain members in good standing in the Union." Joint App'x 45, Art. 2.

As to specific provisions governing A&A's hiring of employees, Article 4, titled "Probationary Period," states in relevant part that "[t]here shall be a ninety (90) day probationary period for permanent workers in which [A&A] has the unrestricted right to discharge new employees with or without cause except that there shall be no discrimination based on union activity." Joint App'x 46, Art. 4. Probationary employees are not entitled to certain benefits guaranteed by the CBA, such as tuition remission and sick leave. In addition, Article 5, titled "Substitute Employees," allows A&A to hire "substitute employees" defined as individuals "hired to fill in for employees who are out on disability or worker's compensation or approved extended leaves," but provides that "[s]ubstitute employees are subject to the union security clause." Joint App'x 46, Art. 5.

Of particular note, during the 2017 negotiations over the CBA, A&A proposed a new clause which would have permitted A&A to utilize non-union "temporary employees" at will for up to 90 days. The Union rejected this proposal, and it was excluded from the CBA.

4

As to A&A's rights as employer, Article 20, titled "New Employees," allows A&A to "hire employees from whatever source it desires." Joint App'x 57, Art. 20. Article 37, titled "Management Rights," states in part that "[A&A] will determine the size of the work force to be employed on any assignment" and that "all the rights, prerogatives and powers of [A&A], which have not been specifically provided for in a stated term of this Agreement, are retained in the sole discretion of [A&A]." Joint App'x 64–65, Art. 37.

Finally, Article 30, titled "Grievance and Arbitration Procedure," defines "grievance" as "any dispute concerning the interpretation, application or claimed violation of the stated terms or provisions of this Agreement" and provides that disputes that the parties cannot resolve through the voluntary grievance procedure shall be arbitrated. Joint App'x 61–62, Art. 30. This Article further provides that "[d]isputes that do not involve the interpretation, application or claimed violation of the stated terms o[r] provisions of this Agreement shall not be considered grievable" or arbitrable. *Id.*

The instant dispute arose when Union members noticed a number of new, non-union employees performing building service work on the campus in the fall of 2017. When a Union representative attempted to ascertain the employment

5

status of these new employees, A&A responded that they were substitute employees, hired pursuant to Article 5 of the CBA, filling in for bargaining-unit employees out on leaves of absence. But upon checking its records, the Union observed that the number of claimed substitutes exceeded the number of members out on disability, worker's compensation, and other approved leaves of absence. Therefore, on January 12, 2018, the Union sent a written grievance to A&A alleging that A&A had "violated the collective bargaining agreement through its failure to comply with the substitute employees article" and asked A&A to reduce the number of new hires to comply with the provision. Joint App'x 68.

The parties could not resolve the dispute through the voluntary grievance process, and, on January 26, 2018, the Union submitted a written demand for arbitration. Based on its understanding that this excessive number of workers were either impermissible substitute employees or non-union "temporary employees," the Union framed the issue in its request for arbitration as: "[A&A] violated Articles 1, 2, 5, 6, 7, 10, 11, 12, 15 & 20 by improperly using 'temporary employees,' . . . to perform bargaining unit work." Joint App'x 70.

Shortly thereafter, the parties submitted their dispute to binding arbitration. The Union framed the issue as whether A&A violated the CBA by utilizing

6

temporary employees—a term undefined in the CBA and broader in scope than substitute employees—to perform bargaining unit work. At the hearing on June 13, 2018, A&A objected to this broader formulation, arguing that the Arbitrator was confined to the issue proposed by the Union in its original grievance, which mentioned only "substitute employees." Further, A&A denied the arbitrator's subsequent request that the parties grant him the authority to formulate the issue. The arbitrator reserved his decision on A&A's objection and proceeded to hear the case on the merits.

After three days of hearing, followed by post-hearing briefing, the arbitrator issued an opinion and award on December 22, 2018. He first rejected A&A's objection to the formulation of the issue, writing that "the Union's demand for arbitration was consistent with the grievance filed by the Union" and "is arbitrable under the [CBA]." Joint App'x 88. The arbitrator then held that A&A had violated the CBA by "utilizing non-union substitute/temporary and/or probationary employees to perform bargaining unit work." *Id.* at 91. Specifically, the arbitrator found that A&A hired non-union temporary employees, discharged them within 90 days of employment, and rehired the same individuals after a short period of time to keep them under the probationary status permanently. This was "for the

purpose of displacing bargaining unit jobs, paying less than the contractual hourly rate, avoiding the payment of Union dues and fringe benefits, circumventing the intended use of probationary workers and limiting the overtime hours available for regular, full-time employees." *Id.* The arbitrator found that A&A was relying on a bad-faith reading of the management rights and probationary period clauses to effectively grant itself the right to hire temporary employees at will, a right which was explicitly rejected during the negotiations of the CBA. Following this decision, the arbitrator held a damages inquest and issued a relief award in the amount of $1,702,263.81 to the Union, its affiliated benefit funds, and its affected members.

On March 25, 2019, A&A filed a lawsuit in New York state court to vacate the arbitration award, arguing that the arbitrator had exceeded his authority by adopting the Union's formulation of the issue and by misapplying the provisions of the CBA. Subsequently, the Union removed the action to the United States District Court for the Southern District of New York and brought a cross-petition to confirm the arbitration award. On January 13, 2020, the district court (Briccetti, *J.*) denied A&A's petition to vacate the arbitration award and granted the Union's cross-petition to confirm the award. A&A timely appealed.

8

## II. Discussion

"We review a district court's decision to confirm an arbitration award *de novo* to the extent it turns on legal questions, and we review any findings of fact for clear error." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003).[1]

"A federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *N.Y. City & Vicinity Dist. Council of the United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of N.Y., Inc.*, 826 F.3d 611, 618 (2d Cir. 2016). A party petitioning a federal court to vacate an arbitration award bears a "very high" burden of showing that the award in question falls within one of a small number of exceptions to this general rule, set forth in statute and case law. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

One such exception appears in the Federal Arbitration Act, which allows courts to vacate an award if "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4); *see also Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011). Objections to an award on the grounds that the arbitrators exceeded their

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

authority are narrowly applied, and the focus of the judicial inquiry is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrators correctly decided that issue.*" *Jock*, 646 F.3d at 122 (emphasis in original).[2]

A&A now asks us to vacate the arbitration award on the ground that the arbitrator exceeded his authority in two ways: (1) by ruling on an issue that was not properly before him and (2) by changing the CBA's express terms without the parties' consent. We find both arguments to be meritless.

## A. Whether the arbitrator exceeded his authority by ruling on an issue that was not properly before him

A&A first contends that the arbitrator exceeded his authority by considering issues beyond those that the parties had submitted for his consideration. In A&A's view, because the Union's original grievance mentioned only the substitute employee provision, the arbitrator should not have considered any issues beyond

---

[2]     Technically the arbitrations in the labor context are governed by the Taft-Hartley Act rather than the FAA. But in this particular context, we have substantially imported the analysis of the FAA. *See Coca-Cola Bottling Co. of New York v. Soft Drink & Brewery Workers Union Local 812 Int'l Bhd. of Teamsters*, 242 F.3d 52, 53–54 (2d Cir. 2001) ("[I]n cases brought under Section 301 of the Labor Management Relations Act of 1947 ('Taft–Hartley Act'), 29 U.S.C. § 185, the FAA does not apply. . . . [T]he body of law developed under Section 301 will at times draw upon provisions of the FAA, but by way of guidance alone.").

substitute employees, such as temporary and probationary employees. When the arbitrator expanded the scope of the issue at arbitration, the argument goes, he deprived A&A of its contractual right to engage in the pre-arbitration steps of the grievance procedure to resolve disputes concerning temporary and probationary employees.

This argument, focusing unnecessarily on form over substance, is a red herring. We agree with the district court that "[t]he real substance of the union's initial grievance was the contention that non-union workers were improperly performing bargaining unit work," a dispute which "clearly concerns A&A's use of temporary employees." Joint App'x 237–38. Moreover, the Union's grievance was based on facts that were fully known to A&A at the time the grievance was delivered, even though the grievance did not explicitly include the terms "temporary employees" and "probationary employees" and other relevant provisions of the CBA.

Furthermore, the arbitrator reasonably found that the Union's reference to the substitute employee provision in its original grievance was attributable to A&A's false statements that all of the new workers were substitute employees. We will not allow A&A to constrain the scope of the arbitrator's authority based on its

11

prior misstatement regarding the status of these employees.

Alternatively, relying on a general principle that arbitration is a matter of consent, A&A essentially argues that the arbitrator exceeded his authority by ruling on a formulation of the issue to which it never consented. In support of this argument, A&A emphasizes that it objected to the expanded formulation of the issue submitted by the Union and that A&A declined the arbitrator's request that the parties allow him to formulate the issue.

Our prior holding in *Socony Vacuum Tanker Men's Ass'n v. Socony Mobile Oil Co.*, 369 F.2d 480 (2d Cir. 1966) compels us to reject this consent-based argument as well. Unlike here, the collective bargaining agreement in *Socony* contained an arbitration provision that explicitly stated: "The statement of the question to be arbitrated shall be mutually agreed upon." *Id.* at 481. Like A&A here, the employer in *Socony* asserted that, even if the dispute there were arbitrable, arbitration could not be compelled unless the parties mutually agreed on the issue to be submitted, relying on the quoted provision above. *See id.* at 483. We rejected that interpretation as "emasculat[ing] the arbitration clause" and interpreted the quoted provision as "requiring the parties to make a reasonable effort to agree on the statement of the issue to be submitted." *Id.* Because the CBA here does not even

12

contain a provision requiring the statement of the issue be mutually agreed upon,

A&A's argument here is even weaker than the employer's argument in *Socony*.

Our holding in *Socony* thus compels us, *a fortiori*, to reject A&A's argument here.

This conclusion is consistent with our sister circuit's decision in *Avon Prods.,*

*Inc. v. Int'l Union, United Auto Workers of Am., AFL-CIO, Local 710*, 386 F.2d 651 (8th

Cir. 1967), which we find instructive. In that case, the employer asked the circuit

court to, *inter alia*, declare that the grievances at issue were not arbitrable based on

their view that the grievances did not correctly state the issues in dispute. *See id.*

at 656. The Eighth Circuit denied this request, pointing out that the collective

bargaining agreement there – like the CBA here and unlike the agreement in

*Socony* – did not reserve to the parties the right to determine the precise language

to be used in submitting each dispute to arbitration. *See id.* The Eighth Circuit

reasoned that "the inclusion of such a clause would be an indication that they did

not intend to submit all [grievances subject to the arbitration clause in the

collective bargaining agreement] to arbitration, and would indicate that the parties

were reserving to themselves the right to determine the disputes, if any, that they

would arbitrate. To imply such a reservation here would be contrary to the federal

common law encouraging the arbitration of labor disputes and cannot be

13

sustained." *Id.* at 656–57. We adopt this reasoning in the present case: as the instant dispute concerns "the interpretation, application or claimed violation of the stated terms or provisions of [the CBA]," precisely the type of dispute that the parties had previously agreed to submit to arbitration if not resolved through the grievance process, Joint App'x 61, Art. 30, A&A "cannot frustrate the arbitration process by refusing to agree on the form of the issue to be submitted to arbitration," *Avon*, 386 F.2d at 657.[3]

## B. Whether the arbitrator exceeded his authority by altering the terms of the collective bargaining agreement

A&A also argues that the award should be vacated because the arbitrator essentially rewrote the CBA. Specifically, A&A argues that the arbitrator exceeded

---

[3] In certain circumstances, parties that cannot agree on the framing of an issue to submit to an arbitrator may petition a federal court to resolve the framing dispute (*e.g.*, through filing a petition to compel arbitration), after which the court would frame the issue and remand the case to the arbitrator for further proceeding. *See Socony*, 369 F.2d at 482–83. Based on this, A&A argues in effect that the federal court, rather than the arbitrator, should have framed the issue. However, as discussed above, the arbitrator correctly held that the various formulations were essentially the same, and there was no need for the federal court to get involved in formulating the issue. In any event, in this particular case, we agree with the Eighth Circuit "that this matter is one to be resolved by the arbitrator. In framing the disputes, the arbitrator will be limited by the language of the contract. We presume that he will not frame the issue in such a way as to decide matters beyond his authority. If he does so, the aggrieved party is not without relief." *Avon*, 386 F.2d at 657.

14

his authority in ruling that A&A violated the CBA by using temporary employees, because the CBA does not mention the term "temporary employees," and because the CBA provides that "[d]isputes that do not involve the interpretation, application or claimed violation of the *stated terms* o[r] provisions of this Agreement shall not be considered grievable." Joint App'x 61, Art. 30 (emphasis added).

While A&A is correct that the term "temporary employee" is not stated or defined in the CBA, this argument is meritless. The instant dispute arose because A&A attempted to hire non-union temporary workers by means of its strained interpretation of the probationary period, new employees, substitute workers, and management rights provisions of the CBA. Accordingly, this dispute over A&A's right to hire temporary workers "involve[d] the interpretation, application or claimed violation" of these provisions of the CBA. *Id.*

Finally, A&A asserts that the arbitrator flat out ignored the management rights, new employee, and probationary period clauses of the CBA, despite the CBA's clear statement that "[t]he arbitrator shall not have the authority to add to, *subtract from*, modify, or amend the provisions of the Agreement." Joint App'x 62, Art. 30 (emphasis added). We disagree. Here, the arbitrator squarely addressed

15

the management rights clause when he wrote that A&A's "overreaching interpretation of the management rights clause" to hire temporary workers was a bad faith attempt at achieving "what was not achieved in negotiations" leading up to execution of the CBA. Joint App'x 89. Likewise, the arbitrator reasonably found that A&A's underhanded plan to hire new employees, fire them before the 90-day probationary period had expired, and then re-hire them as new hires after a short break could not be justified through the probationary period and new employee clauses. A&A's argument here is, in fact, nothing more than a backdoor attempt to undermine the arbitrator's reasonable interpretation of the CBA. *See Jock*, 646 F.3d at 122 ("We will uphold an award so long as the arbitrator offers a barely colorable justification for the outcome reached.").

## CONCLUSION

We have considered all of A&A's remaining contentions on appeal and have found in them no basis for reversal. Accordingly, we **AFFIRM** the district court's judgment.

16